## No. 13,072.

## JAMES BRADDOCK CRAVEN VS. BOARD OF LEVEE COMMISSIONERS FOR ORLEANS LEVEE DISTRICT.

### SYLLABUS.

Assuming (arguendo) that a percentage upon the amount involved in a contract is a proper basis upon which to fix the compensation of a consulting mechanical engineer, in a case where he is called upon to advise with regard to all the specifications and with regard to the contract as an entirety, such method of arriving at the compensation can not be adopted when the services for which the engineer is employed, and which he renders, relate only to a particular question or portion of the work.

ON APPEAL from the Civil District Court for the Parish of Orleans. Ellis, J.

*Branch K. Miller* for Plaintiff and Appellant.

*Bernard McCloskey* for Defendant and Appellee.

Submitted on briefs April 21, 1899.
Opinion handed down May 29, 1899.

The opinion of the court was delivered by

MONROE, J. Plaintiff alleges that he is, by profession, a mining and mechanical engineer, that he was employed by defendant as consulting engineer, and, in that capacity, rendered certain services, in connection with a contract, into which defendant had entered, involving an expenditure of $74,000, and that he is entitled to three per cent. on that amount, or $2,220, as his compensation; and he prays for judgment accordingly. There was judgment in the lower court in plaintiff's favor for $550, and he has appealed.

It appears from the evidence in the record, that the defendant contemplated establishing a pumping station, for drainage purposes, and that, under its directions, general specifications were prepared by the. City Engineer to serve as the bases for bids from contractors, and that bids, to conform thereto, were called for, and received from various persons, and, among others, from the New York Dredging Company, which company offered to put up and equip the station, complete, for $74,000, according to detailed specifications, submitted with its bid, agreeably to the requirements of the call issued by the defendant.

It further appears that the bid and specifications of the New York Dredging Company were submitted by the defendant to L. W. Brown, City Engineer, and A. C. Bell, the engineer of the defendant board, who reported the same back to defendant with suggestions of their own, which, in the main, were approved and accepted. There was one point, however, upon which a discussion arose in the board. One of the members objected to the boilers indicated in the specifications, which were of the curved, or bent, tube pattern, and advocated the substitution therefor of boilers with straight tubes. As a result of this discussion a motion was made by the objecting member, and adopted by the board, that the plaintiff be selected as an expert to aid, by his advice, in the determination of the question of the boilers to be selected. The discussion as to the boilers led, at a later period, to

more or less discussion upon the subject of the engines, and the plaintiff's attention was particularly directed to that subject. So far as the record shows, there was never, at any time, any necessity; any desire, any suggestion, or any intention, to call in an expert, or consulting engineer, for any other purpose than with regard to the boilers and engines, though as a mater of fact, the plaintiff, when called in gave some advice concerning the pumps. The two engineers already in the service of the board were both civil engineers, and Brown was also a mechanical engineer. The plaintiff describes himself as a mining and mechanical engineer, and says that he was employed as a "consulting" engineer. He was certainly not employed as a consulting mining engineer, from which follows, and it is so admitted by his counsel, that he must have been employed as a consulting "mechanical engineer." The contract in contemplation called for an expenditure of $74,000, of which by far the larger proportion was to be invested in static structure; that is to say, in a massive building; whilst the boilers, engines, pumps, etc., represented the smaller proportion of the outlay. If there is any meaning in the descriptive terms used, and if the institutions of learning intend anything when they graduate one student with the degree of mechanical engineer, and another as a civil, or military, or mining, or hydraulic engineer, the mechanical engineer should possess a proficiency not possessed by the others in the knowledge of designing, constructing, setting up and operating boilers, engines, pumps, and machinery generally, and would, therefore, be a proper person to call upon as an expert in questions of that character. His knowledge might, and probably would, in practical life, extend to the construction of buildings in so far as buildings might be needed for the accommodation of engines, machinery, etc., which it is his special business to erect and operate, but, in this respect, if it can be said that his profession extends thus far, it merely overlaps that of the civil engineer or architect, and in that field he has less right than they to be regarded as an expert. Aside, therefore, from the fact that the defendant was satisfied, so far as the building was concerned, with the work of the civil engineers, Bell and Brown, and needed, and intended to call for, no further assistance, there is no sufficient reason shown why, as to that part of the work, they should have called upon the plaintiff in his capacity of mechanical engineer. It is said, however, that the defendant, as a matter of fact, did call upon the plaintiff to

act as consulting engineer with respect to the whole contract, and that he so acted; and this court is referred to the letter, from defendant, pursuant to which plaintiff entered upon his employment and did the work for which he now claims compensation. That letter is dated February 17th, 1896, is signed by the secretary of the board, and reads as follows, to-wit:

"I am directed by the board to inform you that, at a meeting held "on Saturday, February 15th, you had been appointed the mechanical "engineer to pass upon the plans and specifications of the New York "Dredging Company, submitted for approval by the engineers of the "board. Will you kindly call at this office as soon as possible to con- "fer with Mr. Bell, the engineer of the board, and the City Engineer.

\*        \*        \*        \*        \*        \*        \*        \*        \*.

"P. S.   The engineers have agreed to meet here at 11 a. m.   Will it "suit your views; if not please notify by 'phone at what time you "may be able to attend."

The plaintiff attended the meeting appointed in the postscript and thus entered upon his employment, which may be said to have extended, in intermittent form, over a period of twelve days, including the day upon which he received the letter, and the 26th of the same month, when he made a second, and last, report. Within that period he had probably five interviews with Mr. Bell, the engineer of the board; probably twice as many with Mr. Brown, the City Engineer; he visited the scene of the work three times; and he carried on correspondence, by telegraph and mail, with several business houses, in what he conceived to be the discharge of the duties devolving upon him as the result of his employment. He also had several interviews with the defendant board, and he addressed to it two communications, embodying, apparently, all the advice which he thought proper to give, the one dated February 21st, and the other February 28th, 1896.

Now there can be no doubt that plaintiff was selected as a consulting engineer; he so alleges, and it is undisputed. It is plain, also, from the terms of the letter upon which he relies, that he was employed, and was expected, to consult; from which it would seem to follow that he is entitled to compensation, in any aspect of the case, only with respect to such matters as he consulted or gave his advice, upon , with   or   to   the   defendant   or   its   already   employed engineers.   Bearing   this   in   mind,   we   find   that   Mr.  Bell and   Mr.   Brown,   both   testify   that   nothing   was   ever   dis-

cussed between them and plaintiff except some questions concerning the boilers and engines, with perhaps a bare mention of pumps. Dreyfous, the president, and Pfister, and Abascal, members of the board, testify (Dreyfous distinctly, the others not so clearly,) that in his interviews with the board nothing was ever mentioned by the plaintiff except boilers, engines and pumps. The two, and only, communications addressed by the plaintiff to the defendant refer to absolutely nothing except boilers, engines and pumps; and with regard to the latter there is merely a suggestion that the pumps made by a particular manufacturer should be selected in preference to pumps of some other make. The correspondence, telegraphic and epistolary, between plaintiff and various manufacturers, offered in evidence by him, also refers entirely and exclusively to boilers and engines, with perhaps some mention of pumps.

If, therefore, the plaintiff ever consulted with the defendant, or its engineers, upon the subject of the foundations, or the superstructure, of the building provided for in the contract with the New York Dredging Company, or upon any other subject provided for in that contract, except the boilers, engines and pumps, those with whom he so consulted were entirely unconscious of such consultation.

There is no reason to doubt that the plaintiff is a competent mechanical engineer, and the court does not question, since he states it to be a fact, that he went over the entire specifications submitted by the New York Dredging Company. But, upon the other hand, we can not escape the conviction that he knew, what every one else connected with the matter (with perhaps one exception) knew, i. e., that he had been called in, and was expected only to give his advice in regard to specific matters, in the knowledge of which it was supposed, and no doubt, justly, that he was particularly proficient. Under these circumstances his investigation of other matters was equally gratuitous and useless, and entitles him to nothing at the hands of the defendant, since his theory of compensation, upon the basis of a percentage upon the entire cost, is predicated upon the assumption that he was employed to render services, and did render services, with reference to the entire work, and this theory becomes untenable by reason of his failure to convert the assumption upon which it rests into a fact.

The judge a quo, after a very careful examination of the case, was of opinion that, for the work done, the plaintiff was entitled to $550. We are of the same opinion. His employment with defendant was, as we

have seen, of short duration, and does not appear to have interfered with the discharge, by him, of the duties of the responsible position which he holds, or with the receipt of the handsome, and, no doubt, well earned salary attached to it.

The judgment appealed from is, therefore, *affirmed.*