415 So.2d 256 (1982)
FRIDAY'S PLUMBING & HEATING CO., INC., Plaintiff-Appellee,
v.
Homer O. BYERS, d/b/a Homer O. Byers General Contractor, Defendant-Appellant.
No. 14848.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1982.
Rehearing Denied May 12, 1982.
*257 Richie & Richie by John A. Richie, Shreveport, for defendant-appellant.
Cook, Yancey, King & Galloway by Charles G. Tutt, Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
MARVIN, Judge.
The issue in this contract action is whether the required installation of condensate drain lines on rooftop air conditioning systems was an obligation of the plumbing subcontractor.
The plumbing subcontractor, Friday's, brought the action to compel the general contractor, Byers, and his surety, to pay the amount Byers withheld on the plumbing subcontract ($15,956.50). This amount was withheld because Byers contended that Friday's owed Byers for the cost of having another subcontractor install the condensate drain lines ($11,000). Byers reconvened for the cost of this work.
The trial court rejected the demands of Byers and granted Friday's demands. Byers and his surety appeal.
Byers contends that the trial court erred in interpreting the contract and in relying on the interpretation offered by Guth, the consulting mechanical engineer, who wrote that part of the contract, plans, and specifications in question. Byers argues that Guth, while qualified as a consulting engineer, was not qualified to offer an opinion of what respective work a general contractor could reasonably require, under this contract, of the air conditioning subcontractor on the one hand and of the plumbing subcontractor on the other.
We find that the interpretation of the contract by the trial court is correct and is shown to be substantially supported by the testimony of others who are competent in this area of the building trades industry and we affirm the judgment appealed.

THE FACTS
This controversy stems from the desire of the Bossier Parish School Board to air condition 22 of its schools and other buildings. The Board advertised for bids on eight bid packages to facilitate and expedite the work.
In preparing his bid on Bid Package No. 1 as general contractor, Byers obtained proposals from several subcontractors in the fields in which work was required, including fields such as roofing, air conditioning, and plumbing. Friday's generally obligated itself to Byers to "furnish all material and *258 perform all work necessary to complete the plumbing work on Bid Package No. 1 ..." for $67,900. This package covered the work at the elementary schools at Benton and Plain Dealing and at the high school at Plain Dealing.
While the contract is to be construed as a whole, Section 15B relates to the plumbing requirements and Section 15C relates to the air conditioning requirements. Section 15B reads in part:
"SECTION 15BPLUMBING
* * * * * *
"DESCRIPTION OF WORK:
"The extent of plumbing systems is indicated by drawings and schedules, and the requirements of this section. Principal items are as follows:
Sanitary Drainage system.
Water piping system.
Gas piping system.
Services to heating and air conditioning equipment.
Water heaters.
Demolition.
* * * * * *
"Sanitary Drainage System: Provide a system of sanitary drainage and venting as indicated, leaving all equipment being furnished in the building contract fully connected and ready for operation.
* * * * * *
"Floor Drains: Provide deep seal P-trap at each. (Minimum 4" seal.) Drains in waterproofed membraned floors to be equipped with clamping rings fastened and flashed to membrane.
* * * * * *
"Roughing For Air Conditioning and Heating Equipment: Provide valved water, gas and drain at points indicated for air conditioning and heating equipment. Final connection is included under Section 15C.
"Backflow Prevention: Provide, in the cold water make-up line to each heating water system, a line size backflow preventer with drain piped to nearest floor drain."
Section 15C reads in part:
"SECTION 15CHEATING, VENTILATING AND AIR CONDITIONING
* * * * * *
"Blowdown and Drain Piping: Provide drain piping, blowdown piping, etc. throughout, including air unit drain lines, pressure relief valves, etc. Pipe all drains to floor drains. Provide flanges or unions at each to permit disassembly. Use plugged tees for all changes in direction for air conditioning condensate drain lines.

* * * * * *
"Plumbing Work: Gas and cold water lines to equipment requiring same are specified in Section 15B. Under this section make final connections thereto as indicated and as required." Emphasis ours.
The condensate drain lines from air conditioners are also referred to as drain lines or drain piping in the contract. The services to air conditioning equipment in § 15B (explained as gas and cold water lines in § 15C) are not drain lines. The sanitary drainage system in § 15B is a vented system that is a part of the sewer system of the building which includes floor drains. The plumbing contractor is required to provide this drain system to which the air conditioning subcontractor is to connect condensate drain lines from the air conditioners he installs. Section 15C confirms that gas and cold water lines to air conditioning equipment are § 15B plumbing, the final connection to which is to be made by the air conditioner, but expressly requires that the air conditioner subcontractor shall
"... [provide] drain piping ... throughout, including air unit drain lines ... [and] [p]ipe all [air conditioning condensate] drains to floor drains ... [and] [u]se plugged tees for all changes in direction for air conditioning condensate drain lines."
The contract uses the term air conditioning condensate drain lines only in the Blowdown *259 and Drain Piping paragraph of § 15C that generally states the work requirements of the air conditioning subcontractor.
The testimony, in varying degree, of the architect, the mechanical engineer who wrote Section 15 of the contract for the architect, and others experienced in either or both the estimating of bids and the performing of air conditioning and plumbing work under contracts of this type and wording, generally support the findings and the analysis of the contract made by the trial court.
It was explained that the term air conditioning condensate drain lines and other language in the contract has been used in contracts of this type for more than 20 years. The terms of the contract have acquired some meaning in the industry. CC Art. 1947.[1] This record contains substantial evidence to support the trial court's express finding that the most experienced and qualified persons in this industry consider air conditioning condensate drain lines to be the responsibility of the air conditioning subcontractor. CC Art. 1947. Additionally, this record shows that the air conditioning subcontractor specifically conditioned its bid to exclude not only plumbing, but the condensate drains.
Some of the witnesses who were experienced or knowledgeable in bidding on and working under such contract language acknowledged that the language could perhaps be interpreted either as plumbing or as air conditioning work. The trial court, however, was not clearly wrong in finding that the evidence preponderated that it was customarily accepted by those most experienced and qualified in the field that air conditioning drain lines are the required work of the air conditioning subcontractor and not the plumber.[2]
A consulting engineer of 20 years experience who writes mechanical engineering contract specifications for plumbing and air conditioning for the architect and who has supervised the construction under this phase of such contracts, is competent to express his opinion as to who customarily is required to do what work. Craven v. Orleans Levee Dist., 51 La.Ann. 1267, 26 So. 104 (1899).
A trial court has great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. We find no clear abuse of discretion.
For the reasons assigned below and supplemented here, and at appellant's cost, the judgment is
AFFIRMED.
NOTES
[1] "Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong."
[2] Testimony to this effect was elicited from two experienced plumbers (Mazzone and Robertson), and an experienced air conditioning contractor (Segal). The trial court discussed, but gave little weight to, the testimony of Byers and others to the contrary. The trial court also accepted the engineer's testimony that there was no distinction between rooftop condensate drains and condensate drains from air conditioning equipment elsewhere in the building. The contract also does not make this distinction.