GARRISON, Judge.
This is an appeal from a judgment of the district court rendered June 30, 1983, granting judgment in favor of plaintiff J. William Sizeler and against defendants Stanley W. Muller, Stanley W. Muller and Associates, Inc. and Sizeler and Muller, A Partnership, and awarding plaintiff damages in the amount of $167,140.98 plus interest and costs. Due to an error in calculation, a joint motion to amend and recast the judgment in the amount of $138,-524.48 was granted.
The trial judge provided the following written reasons for judgment:
“William Sizeler and Stanley W. Muller were in partnership as equal partners in the firm of Sizeler and Muller. The partnership began negotigations with certain individuals in a speculative venture, which was to be an office building located in downtown New Orleans. One of the key features of the speculation was to secure a tenant, which would insure financing, and thus insure success of the venture.
All of the preliminary work was done by the firm of Sizeler and Muller. The site was selected, and certain preliminary drawings were made together with specifications, in order to present some general idea of the building to prospective tenants. It was understood that Sizeler and Muller would be architects for the project, should it be successful. The Architectural fee was agreed to be 5% of the cost of the project.
By April, 1979 a tenant was found, the site was selected, a job number 211, given to the project in 1975 was carried over and preliminary financing was obtained. Other preliminary steps were taken, including the acquisition of the building site, a payment of $25,000.00 was given to Muller and Associates, against the fee, and test pilings were driven. The formal contract was signed on August 2, 1979. Differences developed between the partners who formally agreed to terminate their partnership on May 31, 1979.
*1270 In their agreement of dissolution it was agreed that any new work coming to the firm after April 25, 1979 would belong in full to the architect who acquired the business. The partners also negotiated the division of all partnership affairs with the exception of job 211. In connection with jobs continuing after dissolution, the remuneration was to be determined by the percentage of completion the partners were to divide equally. The fee up to the date of dissolution of the partnerships, and the balance of the fee was to be divided 75% to the partner who completed the job, and twenty five percent to the remaining partner.
The partners are in complete disagreement as to a formula to be applied in settling accounts on Job 211. Hence this lawsuit.
This trial lasted for several days. The court heard numerous fact witnesses, including the partners, heard several experts, and was exposed to numerous charts, plans, and various other exhibits. In addition each party submitted excellent post-trial memoranda.
To say that there is a legal need for an accounting in this case is facetious. The problem concerns the method to be adopted. The decision will rest upon conclusion of fact, application of figures, and application of a formula.
There is no doubt in the Court’s mind that there was an understanding between all parties concerned in the beginning of the project that should a building be constructed Sizeler and Muller would be the Architects for the project and that the gross fee would be 5%. As a matter of fact the engineers and their fees had likewise been determined through percentages.
Although the contract was formally signed after the dissolution of the partnership, it appeared that it was merely a final reduction to writing of what had always been contemplated by the parties. There is no doubt in the Court’s mind that this was a partnership asset. Now, how shall it be divided?
The formula agreed upon by the parties for the dissolution of their other assets, in the Court’s opinion, cannot be used. The parties did not choose to apply it, and the Court will not force them to do so.
It is obvious that the fee cannot be split on a fifty-fifty basis. All parties agree that the supervising Architect is entitled to the greater percentage, for the reason that he has the job of supervisor, which means additional expenses and overhead. The Court feels that the following method will be fair to all parties; namely, to consider the whole fee as a partnership asset, to deduct the overhead costs from the gross and then to divide the remaining assets on an equal basis. Since the partnership was bearing the costs of overhead equally, prior to dissolution, this factor will not be taken into consideration.
Although admittedly, the time records of defendant Muller were estimates, it appears little doubt that he did spend considerable time on the project, for which time he should be compensated, allowance will be made for this time by computing it into the overhead on the project; Defendant’s exhibit 25 furnishes the basis for these computations.
After deducting for engineering expenses the adjusted gross architectural fees amount to $563,815.11. From this figure must be deducted the overhead costs past May 31, 1979, including Mr. Muller’s time, which figure amounts to $197,832.20. Since both parties bore the expenses and overhead prior to dissolution of the partnership, this figure will not be considered. The net Architectural fee to be divided is therefore $334,281.97, which will give a figure of $167,140.98 due to each party.
There will therefore be Judgment in favor of plaintiff J. William Sizeler and against Stanley W. Muller et al in the full sum of $167,140.98 with legal interest from date of judicial demand until *1271 paid, and for all costs of these proceedings.”
On appeal, the appellant argues that: “(1) The trial court erred in finding that there was any agreement or contract between the Partnership and the developer of the Chevron Building prior to April 25, 1979 or May 31, 1979.
(2) The trial court erred in finding that the right to the architectural fees from the Chevron Building was a Partnership asset.
(3) The trial court erred in awarding the plaintiff any recovery.
(4) Alternatively, the trial court erred in failing to base the award made to the plaintiff on the theory of quantum meru-it.
(5) The trial court erred in failing to make a factual finding as to the value, if any, of Partnership services rendered pri- or to dissolution that were of benefit to the defendants.”
Plaintiff and defendant were friends and co-workers at a local architectural firm when on January 1, 1973, they formed an architectural partnership and commenced with “Job # 1”. In the summer of 1975, “Job #211” later known as the Chevron Building was opened. On May 31, 1979 by contract, the partnership was dissolved. The partnership’s last job number was 487.
In the summer of 1975 developer Jerome Goldman began to study numerous parcels of land for possible development. At that time, it was understood that if the building were built, the Partnership would be paid 5% of the price of building for architectural services. In October of 1975 the site at O’Keefe and Gravier Streets was under serious consideration. In 1976 the Goldman team contacted Chevron as a potential lessee. In 1977, the Gervais Favrot Construction Company was hired. In 1978, the mechanical, electrical, and structural engineers were hired, and during that summer, the relationship between the two partners began to deteriorate.
In February of 1979, the partnership submitted a written contract for architectural services for a 5% fee and a $25,000.00 initial payment. Goldman did not sign the contract, but did pay the $25,000.00 of which $18,000.00 was paid to the engineers and $7,000.00 was retained by the partnership. (Invoice # 1).
In March of 1979, Muller announced at a partnership meeting that the Chevron building would definitely be built.
By mid-April, the contractor had priced the building to within 3% of its actual price and near the end of April, a newspaper article appeared announcing construction of the building. On April 25, 1979 a memo prepared by Muller’s attorney provided:
“... any work which they [Sizeler and Muller individually] obtain and sign for a contract for or after April 25 shall be the job for the benefit of the partner who gets the work.” (D-9)
During May, Goldman bought the site and commenced construction.
On June 1, 1979 the two partners signed an “Agreement to Terminate Partnership” which declared that the partnership “has been terminated as of midnight May 31, 1979.”
On June 5 Muller individually received a payment of $30,000.00 on the Chevron Building from Goldman as per Invoice # 2.
On July 2, 1979 Muller submitted Invoice # 3 to Goldman showing a fee of 5% of the April, 1979 price set by Favrot as due and owing and giving credit for $54,000.00 already paid. This invoice was voided and on August 2, Goldman signed a written contract embodying the same terms. On that same day, Muller reissued Invoice # 3 charging the same 5% and giving a credit for $55,000.00 already paid. On August 20, Goldman paid the net of $252,976.66 and paid the remainder in 20 equal installments. The total fee paid was $879,933.30. Of the fee paid, $316,118.19 was paid to the engineers. The adjusted gross fee in dispute is $563,815.11.
On appeal, Muller basically argues that his former partner is not entitled to any of the fee because the Chevron Building is a “new work” under the April 25 memo, or *1272 alternatively, that if his former partner is entitled to anything, he is only entitled to an award on a quantum meruit basis.
The trial court concluded that the Chevron Building was not a “new work”. He found that the August 2 agreement signed by Goldman was a mere ratification of a prior existing oral contract.
In the instant case, the elements of a valid contract were met:
1. parties legally capable of contracting
2. consent legally given
3. an object
4. a lawful purpose
Additionally, in the instant case, a specific price was set. Appellee and the trial judge were both correct in their interpretation that a valid oral contract, subject to a sus-pensive condition, was in effect. The trial judge then concluded that the Chevron Building Job # 211 was a partnership asset. The trial judge is correct and we find this specification of error without merit.
As a partnership asset, the net fee of $563,815.11 could have been found subject to the 50/50 split agreement such that ap-pellee could have argued that he was entitled to $281,907.55 less partnership debts instead of the $138,524.48 awarded. Appel-lee has not additionally appealed and does not seek to have the amount increased, but rather seeks affirmation of the trial judge’s award. Alternatively other post-dissolution carry over jobs were allocated 75% to the overhead former partner and 25% to the other partner.
In an attempt to compensate Mr. Muller for his overhead costs, the trial judge devised the following formula for allocation between the partners:
Gross Pee: $879,933.30
Lee Engineers’ Pees: (316,118.19)
Adjusted Gross: $563,815.11
Less Post May 31st Overhead: (197,832.20)
Less Muller’s Personal Time: (88,933.94)
Net Fee: $277,048.97
Divided by 2: X .50
Due Each Partner: $138,524.48
Appellant argues that instead of the formula cited above, damages should be awarded on a quantum meruit basis. As previously discussed by this court, quantum meruit is a remedy devised by the court where no price has been agreed to by the parties to the contract.
“In the absence of an agreement between the parties as to price, plaintiff is entitled to be paid for the work done by him under the principles of quantum me-ruit, the source of which is La.C.C. Art. 1965. Skains v. White, 391 So.2d 1327 (La.App. 2nd Cir.1980)”
See: Alexis v. Pacaccio, 410 So.2d 867 (App. 4th, 1982).
As between the parties Goldman and the partnership, a price was set at 5% of the total price of the building. As between the two partners themselves a price was set at 50/50 or 75/25. The trial judge by his attempt to reach an equitable solution did in fact apply the theory of quantum meruit in devising his formula. Thus appellant’s second argument is likewise without merit.
In the instant case, it is the oral contract issue which is critical and from which all other logical consequences flow. While appellant raises other arguments dealing with allocation of partnership assets in the absence of agreements, it is the oral contract issue which is the threshold to those later arguments. We cannot conclude that the trial court is manifestly erroneous in its factual determinations on this issue. Canter v. Koehring Co., 283 So.2d 716 (La., 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.