22 So.2d 59

DOLL v. ALBERT WEIBLEN MARBLE &
GRANITE CO., Inc.

No. 37537.

March 26, 1945.

Edward Alexander Parsons, of New Orleans, for Emile B. Doll, plaintiff-appellant.

Edwin J. Prinz, of New Orleans, for Albert Weiblen Marble & Granite Co., Inc., defendant and appellee.

FOURNET, Justice.

This is a sequel to the case of Doll v. Firemen's Charitable and Benevolent Association of New Orleans, La.App., 8 So. 2d 156, wherein the plaintiff in this case was denied recovery of a commission allegedly due him on a quantum meruit basis for services rendered in securing a ten-year lease on property belonging to the association and it is now before us for consideration on a writ granted the plaintiff to review the judgment of the Court of Appeal for the Parish of Orleans reversing

the judgment of the district court and denying his right to recover any amount from the defendant, the Albert Weiblen Marble & Granite Company, Inc., for which company the lease forming the basis of the former suit was secured. La. App., 17 So.2d 313.

Some time in the spring of 1940 the Albert Weiblen Marble & Granite Company, Inc., having sold the realty upon which its business had been conducted to a war industry, was desirous of leasing property owned by the Firemen's Charitable & Benevolent Association of New Orleans situated in the vicinity of City Park so, after consultation with its attorney, Edward Rightor, and at his suggestion that the plaintiff was the proper party to handle the matter because of his acquaintance with the officers of the association, the defendant employed the plaintiff's services to that end. Mr. Doll secured the association's agreement to lease the property to the defendant on terms and conditions entirely satisfactory to both parties and the defendant's attorney, Mr. Rightor, drew up the lease. Before it was signed, however, the defendant's attorney, in the presence of the president and vice-president of the company, asked the plaintiff whether he "had made himself safe on his commissions" (no mention having been made by either of the parties as to what remuneration Mr. Doll would receive for his services at the time of his employment), and was informed by Mr. Doll that the firemen's association had agreed to pay his commission. After demand for payment had been refused by the association, Mr. Rightor prepared and filed a suit against the association for Mr. Doll

for the recovery of this commission, the same being based on a quasi contract. This suit was dismissed by the trial judge when he maintained the association's defense that it had never employed the plaintiff for the purpose of negotiating the lease and had never done or said anything that would lead him to believe he was so employed by the association. The Court of Appeal for the Parish of Orleans in reviewing the case stated that custom cannot replace the law and that Mr. Doll would have to look to his employer, for whom he was at all times acting exclusively, and sustained the judgment of the trial judge. Under the facts as found by the appellate court, we declined to grant writs to review its judgment.

Following this decision the plaintiff instituted the instant suit against the Weiblen company, alleging his oral contract of employment for the purpose of securing the lease from the firemen's association and his success in that respect. In its answer the defendant admitted the execution of the lease, its contents, and that the fee for such services is usually fixed at 5% of the total amount of the rentals in the lease, but denied the alleged employment of the plaintiff and the services rendered by him in connection with the procuration thereof. The defendant then, inconsistent with its denials, pleaded specially that it had been agreed between it and the plaintiff that no commission would be paid by the defendant, the plaintiff to secure this amount from the firemen's association, the owner of the property.

The trial judge was of the opinion that the defendant, having employed the plain-

tiff to perform a certain and definite task which had been done to its entire satisfaction, could not, under the equitable maximum that no one should enrich himself at the expense of another, accept those services without compensating the plaintiff therefor, and rendered judgment against the defendant in the amount of $600, with legal interest from the date of judicial demand until paid.

The Court of Appeal for the Parish of Orleans, applying the provisions of Article 2991 of the Revised Civil Code to the effect that a procuration is gratuitous unless there has been a contrary agreement, reversed the judgment of the trial court and dismissed plaintiff's suit on the ground that there could be no liability on the part of the defendant company because the agency was gratuitous, the plaintiff, although the services exacted of him by his employer were complete, having told the attorney of the defendant company in the presence of its officers, prior to the time the lease was confected, that the firemen's association had agreed to pay his commission. It was to review this judgment that we granted the writs in the instant case.

■■■ We do not think this case presents factual issues controlled by Article 2991 of the Revised Civil Code, but, rather, that it is governed by the jurisprudence of the courts of this state to the effect that where one employs the services of another without specifying what compensation will be paid therefor, or where one avails himself of the services of another in the performance of a task, he is bound to compensate the person so employed or who per-

forms such a service. Salter v. Tourne, 11 La. 99; Giraghty v. Saulet, 18 La. 539; Hillman v. Cage, 6 Rob. 499; Camfrancq v. Pilie, 1 La.Ann. 197; Waterman v. Gibson, 5 La.Ann. 672; Beall v. Van Bibber, 19 La.Ann. 434; Succession of Pereuilhet, 23 La.Ann. 294, 8 Am.Rep. 595; Craven v. Board of Levee Commissioners, 51 La. Ann. 1267, 26 So. 104; Mugnier v. Dendinger, 104 La. 767, 29 So. 345; Succession of Palmer, 137 La. 190, 68 So. 405; Clark v. City of Opelousas, 147 La. 1, 84 So. 433; Kernaghan & Cordill v. Uthoff, 180 La. 791, 157 So. 595; Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656; Hinkle v. City of West Monroe, 196 La. 1078, 200 So. 468; and Mobley-Rosenthal, Inc., v. Weiss, La.App., 152 So. 589. This jurisprudence is founded on the moral maxim of the law that no one ought to enrich himself at the expense of another. Article 1965 of the Revised Civil Code.

The defendant now concedes the plaintiff was employed by it to secure the lease and that this task was completed by the plaintiff to its entire satisfaction, as alleged in planitiff's petition, and we agree with the remarks by counsel for the defendant in his brief in the Court of Appeal (if correct) that "It does seem unfair that Doll can recover from neither party to the lease."

To avoid liability, the defendant relies on the special defense that the plaintiff's commission, under their agreement, was to be paid by the firemen's association. This is based on the conversation that took place in the office of the defendant's attorney just prior to the confection of the lease,

but after Doll had successfully completed negotiations for the same, when Doll stated in reply to the attorney's question: "By the way, have you made yourself safe on your commissions?" that the firemen's charitable association had agreed to pay his commission.

We think the defendant's conclusion that such an agreement was reached with Doll is the result of an erroneous impression that existed in the minds of the officers of the company that the owner of real estate pays the commission in such cases under the prevailing custom in real estate circles, regardless of who employs the agent or broker.

Both Albert and John Weiblen, president and vice-president respectively of the defendant company, stated they were present in the office of the attorney at the time the conversation just referred to took place. According to the record, John Weiblen made the arrangements on behalf of the defendant for Mr. Doll to procure the lease. When he was asked on cross-examination if he had informed Mr. Doll at the time of his employment that he would not be paid any commission he replied: "No, that wasn't discussed because *we understood* it was customary procedure that the owner pays the commissions." And when he was asked what had been said with reference to the commission when the conversation took place after the lease had been procured and while it was being prepared in the attorney's office, he said: " * * * Mr. Doll said he had arranged with the Firemen's Charitable Association to pay it. *They were the owners."* (Italics ours.)

Albert Weiblen, John's father, testified that Doll had been rather emphatic and positive about who was to pay his commission at the time this conversation took place and "had it all arranged with the Committee of the Charitable Association; with the President." And after stating on cross-examination that his son John had made the arrangements with Doll for the procuration of the lease he replied, in answer to a question as to whether or not his son had told him that Doll had agreed to do the work without charge: *"No such thing; I wouldn't even want Mr. Doll to do the work for nothing."* He also stated that the whole matter was "a rather simple thing," adding that he had had a great deal of real estate transactions in his life and there had never been any question but that the agent was always paid his commission by the owner of the property. (Italics ours.)

Mr. Rightor said that while he could not remember the exact words used at the time, "it was there made perfectly clear by Mr. Doll that his commissions were to be paid by the Firemen's Charitable Association," and, in answer to the question whether or not he had filed a suit for Mr. Doll against the association, he replied: "Yes, *and I recited in that suit exactly what he told me was his relationship with them."* An examination of the petition prepared and filed by Mr. Rightor on plaintiff's behalf, however, shows that he did not allege the existence of such an agreement with the association, but, on the contrary, that he grounded the suit on a quasi contract to recover 5% of the total amount of the lease—*"the customary commission*

*in this community, which is paid by the lessor."* (Italics ours.)

In disposing of this question when it was made an issue in Mr. Doll's case against the association, the Court of Appeal for the Parish of Orleans said:

"In our opinion the defendant [association] was justified in believing that it was dealing with an agent of the lessee [Weiblen] who had been employed to find a suitable place for the erection of a building for use in connection with its business. No matter what the custom in the real estate business might be we see no reason why there should not be an exception in cases like the present, where the broker represents only one party to the transaction." Doll v. Firemen's Charitable and Benevolent Association, La.App., 8 So. 2d 156, 157. (Brackets ours.)

The holding of the Court of Appeal was, in effect, that the association could not be made to pay for the services that had been rendered exclusively for the Weiblen company, and we declined to grant a writ to review that judgment.

Testifying in his own behalf, Mr. Doll gave in detail the events leading up to his employment and his success in securing the location desired by the defendant. When confronted with his testimony in the previous suit against the association, where he had stated the officers of the association had agreed to pay his commission, he admitted he had testified to that effect and explained that since the officers of the association had agreed to pay the commission for the services he had rendered his employer, he believed at the time he could make them pay and thereby save his employer from paying the same, adding "they went back on their word" and as a result he lost the suit.

■ While it is true the plaintiff did state to the defendant's attorney that the association had agreed to pay the commission, to which agreement the defendant was not a party, he did not state, nor did he agree, that the defendant would be relieved of its obligation to pay for services admittedly completed at the time such statement was made to the entire satisfaction of the defendant. In any event, there was no consideration shown for such a release.

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is annulled and set aside and the judgment of the lower court is reinstated and made the final judgment of this court. All costs are to be borne by the defendant, the Albert Weiblen Marble and Granite Company, Inc.

HIGGINS, J., takes no part.