391 So.2d 1327 (1980)
Reggie G. SKAINS d/b/a RGS Construction Company, Plaintiff-Appellant,
v.
Rodney WHITE d/b/a Rodney White Construction Company et al., Defendants-Appellees.
No. 14330.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1980.
*1328 Joseph A. Cusimano, Jr., Ltd. by Joseph A. Cusimano, Jr. and Harold Wayne Aswell, Farmerville, for plaintiff-appellant.
Meadors & Meadors by William F. M. Meadors, Jr., Homer, for defendants-appellees, Rodney White d/b/a Rodney White Construction Company, Town of Homer, and American Employers' Insurance Company.
Before PRICE, HALL and MARVIN, JJ.
HALL, Judge.
Plaintiff, Reggie G. Skains d/b/a RGS Construction Company, brought suit against Rodney White d/b/a Rodney White Construction, the Town of Homer, and White's surety to recover the balance allegedly due for seeding, fertilizing and hay mulching work done by plaintiff as subcontractor for White, the general contractor on a job for the town at the Homer Airport. The amount sued for was $16,846.50. The defendants answered admitting that plaintiff was due the sum of $4,684.23, which defendants had offered to pay and were willing to pay to the plaintiff. After trial the district court rendered judgment in favor of the plaintiff for $5,104.23 and assessed all costs to the plaintiff. The plaintiff appealed. We amend the judgment to increase the award to plaintiff and to cast the defendants for costs.
In preparation for submitting a bid on a contract with the Town of Homer to perform certain dirt-moving and landscaping work at the town's airport, Rodney White, a dirt contractor, telephoned the plaintiff, Skains, a seeding, fertilizing and mulching contractor, to obtain a bid or price on the haymulching portion of the contract. *1329 Skains quoted a price of $700 per acre for the eight acres to be mulched. Skains testified he also quoted prices on the seeding and fertilizing parts of the contract. White denied that there was any discussion about the seeding and fertilizing, he having already received prices on these items from two persons in the seed and feed business.
White submitted the low bid of $51,341.11, was awarded the contract, and commenced the work. His bid discloses unit prices of $632 per acre for deep seeding and fertilizing, $537 for shallow seeding and fertilizing, and $875 for straw mulching.
White contacted Skains and it was agreed that Skains would do the hay mulching work for the price previously quoted of $700 per acre. The parties both testified that at this point in time Skains was not given the seeding and fertilizing job. Later, White and Skains met at the jobsite and it was agreed that Skains would also do the seeding and fertilizing work which involved soil preparation, fertilizing and seeding of 26.5 acres. White testified that Skains said he would do it as cheaply as anyone else and that Skains was aware of the prices White had been quoted for this work by other persons. Skains testified that he asked White if he had bid enough to cover the prices that he, Skains, had previously quoted to White, and that he told White that he would do the work as cheaply as anybody "in the business" would do it.
Skains completed his work in three days and submitted the following statement to White:

26.5 acres of seeding & Fertilizer
22,600 lbs. fert at .25 per lb. $ 5650.00
 1,350 lbs. seed at 7.00 per lb. 9450.00
 __________
 $15,100.00
Less cost of Seed & Fertilizer 3,853.5
 __________
 Total Due for Seed & Fertilizer $11,246.50
8 acres of Hay Mulching at 700.00
 per acre $ 5600.00
 __________
 Total Due $16,846.50

White considered the statement excessive and refused to pay it, apparently at first offering to pay $10,000 in settlement and later, through his attorney, offering to pay $4,684.23. This suit ensued.
The district court found, first of all, that there was no contract price established between the parties. With this conclusion we fully agree. The testimony of both parties establishes that a meeting of the minds as to a price which Skains was to charge White for the seeding and fertilizing work was not reached.
The trial court then correctly concluded that plaintiff was entitled to be paid the hay mulching subcontract price of $5,600, which was stipulated by the defendant as being due the plaintiff. The district court also found that plaintiff was entitled to an additional $420 for the hay mulching work since the mulching actually covered 8.6 acres rather than the eight acres originally contemplated. Defendants make no complaint about this item on appeal.
In regard to the seeding and fertilizing work the trial court accepted the defendant's analysis of the amount due. This analysis used the bid defendant received from Fred Smith & Sons for the cost of the seed and fertilizer plus spreading, of $2,337.73, plus $600 which defendant testified would be the reasonable cost of doing soil preparation and rolling work, making a total of $2,937.73 as the total reasonable price for the entire seeding and fertilizing operation. Adding the $2,937.73 to the $5,600 due for hay mulching made the total contract $8,537.73. White had paid $3,853.50 for the seed and fertilizer directly to the supplier; deducting this amount from the total contract price left a balance of $4,684.23. The trial court judgment awarded this amount plus an additional $420 for the added hay mulching, or a total of $5,104.23. In basing the award on this analysis, the trial court was in error. The result of the trial court's analysis and judgment is that the plaintiff recovers nothing for the seeding and fertilizing work successfully completed by him, and, in fact, he is charged with a $900 loss for that work against the amount due to him for the hay mulching work.
In the absence of an agreement between the parties as to price plaintiff is entitled to be paid for the work done by him under principles of quantum meruit, the source of which is LSA-C.C. Art. 1965. Plaintiff is entitled to recover his actual *1330 cost, including general overhead attributable to the project, and a reasonable profit. Brummett v. Hamel's Dairy, Inc., 324 So.2d 502 (La.App.2d Cir. 1975); Swan v. Beaubouef, 206 So.2d 315 (La.App.4th Cir. 1968).
The Fred Smith bid is of little or no assistance in determining the reasonable cost, overhead and profit to which the plaintiff is entitled for the seeding and fertilizing work. The evidence shows that the Fred Smith company is an experienced feed and seed dealer with experience in spreading its product, but with very little experience in the type of project involved in this instance. Its bid did not include the soil preparation and finishing work called for by the contract and performed by Skains. The bid was based on a single application of mixed fertilizer and seed whereas the specifications in the contract called for fertilizer and seed to be applied in separate steps, which is the manner in which Skains did the job and which the evidence shows was in accordance with good seeding and fertilizing practices. The price quoted by Fred Smith included the cost of the seed and fertilizer and spreading, but the actual cost of the seed and fertilizer alone, at least some of which was bought from Fred Smith and which defendant himself paid, was $3,853.50, substantially more than the total Fred Smith bid.
Skains testified that he normally bid this kind of work on a per pound of seed and fertilizer basis and that the going rate at the time, converted to a per acreage figure, was about $570 per acre, the amount that he billed the defendant. That this was the going rate for this type of work was verified by another experienced seeding and fertilizing contractor and by the stipulated testimony of even another such contractor. However, this testimony is not of great value in determining what the actual cost was to the plaintiff, plus overhead and a reasonable profit, which is the standard to be used in setting recovery based on quantum meruit in the absence of an agreed price. What the plaintiff or other similarly situated contractors might have bid for the same job is not the measure of recovery.
Plaintiff testified to the accuracy of and offered into evidence a written detailed breakdown of his actual costs related to both the hay mulching and seeding and fertilizing work. The breakdown reflects labor cost for seven men for three 12-hour days of $1,731.60. The breakdown shows the equipment used on the job at hourly rates, some of the equipment being used in connection with the hay mulching operation and some being used in connection with both operations. The breakdown also shows material costs including hay, asphalt, seed and fertilizer.
The evidence shows that plaintiff spent two days on the seeding and fertilizing operation and one day on the hay mulching work. Accordingly, 2/3 of the labor cost, or $1,153.25, should be attributed to the seeding and fertilizing work. Eliminating the hay machine and asphalt truck which were used only in the hay mulching operation, 2/3 of the cost of the other equipment on the job attributable to the seeding and fertilizing work amounts to $1,438.56. The hay and asphalt used in the hay mulching operation cannot be considered in the cost of doing the seeding and fertilizing work, and the seed and fertilizer were paid for directly by the defendant, so none of the material costs listed in the breakdown are to be considered in the cost of the job to the plaintiff. Consequently, the total cost to the plaintiff of the seeding and fertilizing operation as established by his own breakdown is $2,591.81.
Plaintiff's testimony, corroborated by that of the other two contractors in the same business who are plaintiff's competitors, establishes that contractors in this business seek to make a profit of 50% to 60% on their jobs. This relatively high margin of profit is necessary because of the seasonal nature of the work and risk of unforeseen developments and expenses in connection with particular jobs. The plaintiff is entitled to recover the low-side profit considered reasonable and necessary in his line of work. In setting a reasonable profit of 50%, we have taken into account the fact that the profit percentage in this instance is *1331 being applied to the cost of labor and equipment only, although it is usually also applied to the cost of the seed and fertilizer. Fifty percent of his cost of $2,591.81 is $1,295.90.
Plaintiff offered no evidence as to his general overhead cost other than payroll taxes and insurance which were included in the breakdown of labor costs.
Plaintiff is, therefore, entitled to recover the sum of $3,887.71 ($2,591.81 plus $1,295.90) for his cost, overhead and reasonable profit on the seeding and fertilizing work. Adding the $6,020 due for the hay mulching work, plaintiff is entitled to judgment for $9,907.71. No credit is due to the defendant for the amount the defendant paid for seed and fertilizer because this amount has not been figured into plaintiff's costs.
To view the award made to plaintiff in proper perspective, it is to be noted that the defendant was paid approximately $20,000 by the Town for the seeding, fertilizing and hay mulching portion of his general contract.
Court costs should be assessed to the defendants under LSA-C.C.P. Art. 1920, there being no equitable reason to vary the general rule that costs are to be paid by the parties cast in judgment.
Accordingly, and for the reasons assigned, the judgment of the district court is amended to increase the amount of the judgment in favor of the plaintiff and against the defendants, in solido, to the sum of $9,907.71, together with legal interest thereon from date of judgment until paid, and to cast the defendants, in solido, for all costs of these proceedings, including the cost of appeal.