538 So.2d 569 (1989)
MORPHY, MAKOFSKY & MASSON, INC.
v.
CANAL PLACE 2000, et al.
No. 88-C-0844.
Supreme Court of Louisiana.
January 30, 1989.
Rehearing Denied March 2, 1989.
*570 A.D. Freeman, Jr., Satterlee, Mestayer & Freeman, New Orleans, for applicants.
Wayne Lee, C. Lawrence Orlansky, Stone, Pigman, Walther, Wittman & Hutchinson, Gordon Wilson, Jr., Friend, Wilson & Draper, Victor Stilwell, Jr., Terrence Brennan, Deutsch, Kerrigan & Stiles, New Orleans, for respondent.
CALOGERO, Justice.
Canal Place, as owner, entered into an architectural contract with RTKL, A Professional Architectural Corporation, which obligated RTKL to provide all necessary architectural, engineering, and consulting services required by Canal Place in connection with the construction of Canal Place Phase II, a retail mall and hotel complex located in downtown New Orleans. RTKL thereafter negotiated a subcontract agreement with CBM Engineers, Inc. (CBM) which obligated CBM to perform all structural engineering services, including foundation engineering and design services for the Canal Place project. As indicated by letters from CBM to RTKL dated September 8, 1980 and September 25, 1980 respectively, CBM agreed to perform the structural engineering services subject to a "cap" of $297,511. CBM and RTKL entered into a formal subcontract agreement on November 16, 1981 which included this $297,511 "cap".
CBM, responsive to the wishes of the owner, Canal Place, agreed to have the plaintiff in this case, Morphy, Makofsky and Masson, Inc. (hereinafter referred to as Morphy), design and perform engineering services for the foundation and first floor of the structure.
The matter before this court concerns the claim of Morphy (the sub-subcontractor) against CBM (the subcontractor) for $78,613.00, per invoices calculated on an hourly basis for engineering services admittedly performed by Morphy.[1]
While CBM and Morphy verbally agreed that Morphy should do part of the work *571 CBM had obligated itself to perform for RTKLand indeed Morphy did ably perform all such servicesCBM and Morphy did not execute a written contract in advance of performance, or otherwise, specifically agreeing to the method or terms of payment for such engineering services.
The Civil District Court Commissioner, consistent with the views of all parties, ascertained that Morphy was a "subcontractor" to CBM, although working without a "contract." [Morphy had not responded to CBM's letters requesting that they submit a proposal for their services and negotiate a written contract. Morphy "simply proceeded ... to perform the work."] Finding no contractual theory of recovery, the Commissioner further ascertained that an equitable award "under quasi-contract or de in rem verso, an action in unjust enrichment" was in order, and determined that plaintiff should be awarded against CBM only $45,000, rather than the $78,613.00 Morphy had invoiced, by apportioning the RTKL-CBM "cap" as regards the work Morphy performed.[2]
The district court judgment, over plaintiff's exception to the report, adopted the commissioner's recommendation and cast CBM for only $45,000.00 in favor of Morphy.
The court of appeal affirmed, 522 So.2d 1223 (La.App.1988), concluding that "without a contract ... Morphy can only be compensated under a theory of unjust enrichment or quantum meruit." The court applied the principles governing actio de in rem verso, finding an enrichment of CBM, an impoverishment to Morphy, connection between the enrichment and the impoverishment, an absence of justification or cause (no legal cause supports the enrichment), and no other remedy at law (subsidiarity). Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967), Brignac v. Boisdore, 288 So.2d 31 (La.1974), Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (La.1974).
The court of appeal then found plaintiff entitled to the reasonable value of the engineering services, subject to the equitable limitation which attends the actio de in rem verso, (i.e., no more to plaintiff than his impoverishmentthe actual value of materials and labor furnished including general overhead and reasonable profits and in no event more than defendant's enrichment.)[3] Then, deciding that CBM by virtue of its contractual "cap" with RTKL was not enriched by the full $78,613.00 of services, because CBM was not fully recompensated by RTKL for the services performed by Morphy, they blessed the equitable remedy forged for the parties by the district court.[4]
We granted writs at the behest of plaintiff, prompted in some measure by the dissent in the court of appeal which argued that CBM's "enrichment" in the actio de in rem verso entailed not merely the $45,000.00 regarding plaintiff's work which CBM recouped from RTKL, but the entire $78,613.00 of Morphy's work. The dissent *572 reasoned that CBM's "enrichment" in the actio de in rem verso relief to which Morphy was entitled, included not only the value of Morphy's services which CBM recouped from RTKL, but also the amount by which CBM's losses were reduced because Morphy performed services for which CBM was obligated under the RTKL-CBM contract.
On closer examination it is not at all clear that CBM was enriched to a full $78,613.00, even under the dissent's analysis, for, as CBM's attorney in supplemental brief points out, had CBM performed the services that Morphy performed (and CBM had the ability to do the foundation engineering work) the cost to CBM would have been less than the $78,613.00 charged by Morphy, although the precise amount of such cost is not evident from this record. Two factors which would have prompted a lesser cost to CBM are these: (1) Morphy's $78,613 in charges includes a reasonable sum for profit, which would not have been a "cost" to CBM; and (2) CBM's personnel would not have cost CBM the comparable hourly charges in Morphy's invoices because CBM had salaried personnel already on staff (and not otherwise completely occupied) capable of doing the foundation design and engineering work.
We need not resolve this latter problem, however, for after reviewing the record and the law, we conclude that actio de in rem verso does not apply in this situation.
Morphy has a substantive claim in contract, and the existence of a claim on an express or implied contract precludes application of actio de in rem verso, for there does not exist one of the latter's requirements, that there be no other remedy available at law (subidiarity).
For the reasons which follow, we conclude that Morphy is entitled to recover the full $78,613.00 for the foundation design and engineering services, a reasonable value for the services Morphy performed for CBM under contract.

EXISTENCE OF A CONTRACT
This cause of action arose prior to the effective date of the 1984 revision of the Civil Code articles on Obligations. For this reason, we apply the articles in effect prior to January 1, 1985.[5]
La.Civ.Code Art. 1779 sets forth the requisites for a valid contract: (1) parties legally capable of contracting; (2) their consent legally given; (3) a certain object, which forms the matter of agreement; and (4) a lawful purpose. All of these requisites were met in the present case. Note also that La.Civ.Code art. 1761 defines a "contract" as "an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement."
As already mentioned, Canal Place contracted with the architectural firm, RTKL. RTKL subcontracted with CBM, the defendant in this case, in September of 1980, as a consequence of which CBM was obligated to perform all structural engineering services within a $278,511 "cap", although a formal subcontract between RTKL and CBM was not signed until November of 1981. During the week of October 27, 1980 Canal Place informed Mr. Edward Morphy that his firm was to be involved in the foundation design of Canal Place Phase II. The Morphy firm thereupon contacted CBM, informing CBM that they had been told they would be in CBM's employ and requesting confirmation of the firm's involvement, as well as information regarding the "capacity" and "arrangements" concerning that involvement. By letter dated December 2, 1980, CBM acknowledged Morphy's involvement and proposed certain foundation services for Morphy to perform. Six specific services were proposed in this letter. The letter suggested that Morphy bill CBM "on an hourly basis" and requested an "estimate of maximum billings." The record does not evidence a response by Morphy. CBM again contacted Morphy by letter dated December 24, *573 1980 and informed Morphy that Canal Place and RTKL had instructed CBM that Morphy's work on the project should be expanded. This letter asked Morphy "to consider doing all the phases that I discussed in my previous letter with one added phase." CBM requested that Morphy "send me your proposal to furnish these services as soon as you are able." The record indicates that Morphy did not respond to either of CBM's letters, but that Morphy performed the requested services and kept a record of the hours that the firm worked (the concluding invoices indicate that Morphy's work was completed in August of 1983).
On February 6, 1981, RTKL informed Canal Place of its concern that Morphy had not responded to CBM's contract proposal and requested Canal Place's help in expediting Morphy's involvement as it would "directly affect the forthcoming pricing package." However, CBM did not make any further attempts to get Morphy to sign a contract, nor did CBM request that Morphy cease work on the project until a formal contract was signed. CBM was in need of the services performed by Morphy, and Morphy was performing those services. In fact, CBM was communicating with Morphy while the latter was performing the services, including on the job site.
The contract proceeds received by CBM from RTKL included compensation for the foundation services performed by Morphy for CBM (and, of course, all of the engineering services performed for RTKL including those performed by Morphy for CBM were covered by the RTKL-CBM "cap"). CBM refused to pay the invoices submitted by Morphy for this work because CBM claimed it had no contract with Morphy. We disagree.
In this case, there was a valid oral contract. There was a certain object which formed the matter of the agreement (Morphy's supplying prescribed engineering services to CBM), and consent legally given (both parties agreed for Morphy to do the foundation design and engineering services). Furthermore, the parties were legally capable of contracting, and there was a lawful purpose. All of the requisites of La.Civ.Code art. 1779 were thus met.
At the very least an implied in fact contract existed between the parties.[6] An implied in fact contract is one which rests upon consent implied from facts and circumstances showing mutual intention to contract. V-8 Taxi Cab Service, Inc. v. Hayes, 322 So.2d 442 (La.App. 2nd Cir. 1975). Such implied in fact contracts are not different in their legal effect from express, written agreements. Comment, Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul L.Rev. 263, 298 (1969).
Although the facts and circumstances of this case establish the existence of an oral contract, there was, nonetheless, no concluded agreement as to the remuneration Morphy would receive for the services. A partner of CBM testified as follows:
Q. You did consider that you made an offer to Mr. Morphy in those two letters...?
A. ... in the two letters we outlined the scope of the services that the owner wanted Mr. Morphy to work on.

For that part of the work, there was an agreement between ourselves and Mr. Morphy, we did not have an agreement with him regarding the hourly rates or the billings, no, sir (Emphasis provided).
Q. Well, did Mr. Morphy ever say, "Yes, I will do that work," the work that is in that letter?
A. We did not have any written correspondence from Mr. Morphy saying that he would do the work. During *574 the normal course of events we knew that he was doing the work.
Note that neither La.Civ.Code art. 1779 (requisites for validity of a contract) nor La.Civ.Code art. 1761 (which defines a contract) recites that a contract requires a stated compensation or price. The fact that the amount of compensation Morphy was to receive for his services was not agreed upon does not vitiate the contract, for the law in this situation implies a provision that Morphy would be paid a reasonable sum for his services.[7]
Morphy's remedy at law was to sue on the contract and have the court determine the remuneration he should receive for the services he rendered to CBM, utilizing the codal articles regarding interpretation of agreements. "Where one employs the services of another without specifying what compensation will be paid therefor, or when one avails himself of the services of another in performance of a task, he is bound to compensate the person so employed or who performs such a service." Doll v. Albert Weiblen Marble & Granite Co., 207 La. 769, 22 So.2d 59 (1945). "[Morphy's] claim for compensation should be considered under traditional theories of contract interpretation where a missing but implied term of the contract must be supplied by the court." Porter v. Johnson, 408 So.2d 961, 966 (La.App. 2nd Cir.1981).
"Where there is a contract for the rendering of services but there is no agreement for the price or compensation, the plaintiff is entitled to be paid for the services rendered under the principles of LSA-C.C. Art. 1965.[8]" Id.
Thus the Civil Code articles on Obligations have long furnished the principles for interpreting contracts ambiguous only with regard to compensation or price for agreed upon services. Unfortunately for the purity of our civilian concepts, the cases in our jurisprudence which have applied these codal provisions have often referred to this reasonable value of services or equitable ascertainment of compensation or price as "quantum meruit"[9] or an action in quantum meruit. Quantum meruit may well have been an ill-considered importation from the common law (see that criticism in Oil Purchasers v. Kuehling, 334 So.2d 420 (La.1976)); however, no great harm follows from that importation if we understand that numerous cases in our jurisprudence[10] have used "quantum meruit" as a descriptive term, descriptive of the equitable principles of contract interpretation ennunciated in La.Civ.Code arts. 1903 and 1965, which were the substantive law bases for the decisions in these cases. See Porter v. Johnson, 408 So.2d at 967, n. 4.
A problem has arisen in our jurisprudence only when the courts have moved from quantum meruit as simply a measure of compensation or price unstated in a contract, to quantum meruit, the common law substantive law claim geared to equity and unjust enrichment, something of a counterpart to the civilian actio de in rem verso. Note Custom Builders & Supply, Inc. v. Revels, 310 So.2d 862 (La.App. 3d Cir.1975), *575 wherein the court of appeal stated that "there is a double limitation on the amount of recovery allowed under quantum meruit: 1) plaintiff cannot recover more than the actual value of his services and materials, plus a fair profit; and 2) plaintiff cannot recover more than defendant was enriched by plaintiff's services."[11] See also: Swiftships, Inc. v. Burdin, 338 So.2d 1193 (La. App. 3d 1976) and Houma Armature Works & Supply v. Landry, 417 So.2d 42 (La.App. 1st Cir.1982). These are the appellate cases which have erroneously prescribed that contracts without stated compensation or price, sometimes referred to as "quantum meruit" cases, require that a plaintiff not recover more than a defendant is enriched by plaintiff's services.
The practical consequence of distinguishing our contract cases without stipulated compensation or price (sometimes designated "quantum meruit" cases) from the civilian actio de in rem verso, and perhaps the common law action in assumpsit in quantum meruit,[12] is that in the former the degree of plaintiff's impoverishment and the extent of defendant's enrichment are irrelevant. A person or firm employed by contract is entitled, from the employing party, to the reasonable value of services (where the contract is silent) irrespective of whether the employer's patrimony is commensurately enriched.
Thus, in the case before us, if action de in rem verso is not the appropriate substantive law basis for recoveryand it is not in this casethen the "quantum meruit" to which Morphy is entitled is merely the reasonable value of services.
Actio de in rem verso is indeed not applicable because there exists here an independent remedy at law, that is, in contract. And the contract, without agreed upon price, must be interpreted as requiring that Morphy be paid a reasonable sum for his services. A reasonable sum for his services includes actual cost, including general overhead attributable to the project, and a reasonable profit. Skains v. White, 391 So.2d 1327 (La.App. 2nd Cir.1980); Brummett v. Hamel's Dairy, Inc., 324 So. 2d 502 (La.App. 2nd Cir.1975); Swan v. Beaubouef, 206 So.2d 315 (La.App. 4th Cir. 1968).
We turn now to the reasonable value for Morphy's services. "There is no specific test which must be applied to determine the reasonable value for such services. It is a matter of equity depending upon the circumstances of each case." Jones v. City of Lake Charles, 295 So.2d 914 (La.App. 3d Cir.1974). Morphy invoiced CBM the $78,613.00 in hourly charges here at issue. They kept accurate records of the hours their firm spent on Canal Place Phase II, and these records are not in dispute. There was testimony from an expert in structural engineering that it would not be unusual for a firm such as Morphy's to bill on an hourly basis, and that one of the standard ways of fixing fees on construction costs was the hourly rate. There was also testimony to the effect that Morphy's fee was "eminently reasonable for the work that he performed", and that Morphy's fee was "abnormally, unreasonably low." Furthermore it was suggested at the outset by CBM, as an interim measure at least, that Morphy bill CBM at hourly rates. Considering this evidence in the record, we conclude that Morphy is entitled to the full amount which they invoiced for the services at issue, namely, $78,613.00.

ATTORNEY FEES
Morphy claims that they should be awarded attorney fees pursuant to La.R.S. 9:2781, because of CBM's failure "to pay on an open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed." Without deciding whether this contract claim qualifies as one on an open account, nor whether the invoices were actually attached to Morphy's written demand, we *576 find that the claim is without legal merit, if only because Morphy did not send written demand seeking the $78,613.00 to which we have now found they were entitled.[13]Sears, Roebuck & Co. v. Larose, 460 So.2d 8 (La.App. 1 Cir.1984); Frank L. Beier Radio v. Black Gold Marine, Inc., 449 So.2d 1014 (La.1984); A Better Place v. Giani Investment Co., 445 So.2d 728 (La. 1984).

DECREE
For the foregoing reasons, the judgments of the district court and the court of appeal are affirmed in part and amended and the following decree entered:
It is ordered, adjudged and decreed that there be judgment in favor of Morphy, Makofsky & Masson, Inc. and against CBM Engineering, Inc. in the full sum of $78,613.00 with legal interest thereon from date of judicial demand, and all costs.
AFFIRMED IN PART; AMENDED; DECREE ENTERED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Applicant for rehearing complains that this court decided this case without the benefit of the transcribed testimony of Paul Morphy, who, applicant says, testified that "he never had a contract with anyone." Notwithstanding this court's communication with counsel for both parties, neither one, to this date, has secured or filed a transcript of that testimony. We are told that the court reporter cannot find her notes, and a search of the District Court warehouse for these notes has not been successful. Nonetheless, even assuming that Paul Morphy did testify that there was no contract, the record indicates that he had to have meant that there was no written contract with anyone. We decided, after review of the facts in this case, that there was at least an implied-in-fact contract, albeit without a specified price or compensation, for the services to be performed. The absence of a written contract was not relevant to this finding. As we stated in our opinion, the Civil Code provides for contracts whereby the consent to contract is implied from actions without words, either written or spoken[1], and a contract can exist without a stated compensation or price. Accordingly, the application for a rehearing is denied.
NOTES
[1] Morphy's original claim was for $91,926.00. $13,313.00 was assessed in Morphy's favor against RTKL by the district court, and is not involved in this appeal.
[2] The services performed by Morphy were owed by CBM to RTKL under contract. Morphy's work and the added services performed by CBM were covered by the "cap" in the RTKL-CBM contract. CBM thus argued that its enrichment by Morphy's performing services for them was the amount allocated to Morphy's services and paid CBM by RTKL under a prorated reduction caused by the "cap." The Commissioner accepted this argument and determined that CBM was "enriched" by Morphy's services only up to $45,000.00. In determining this amount the Commissioner made the following computations: The dollar value of CBM's engineering services computed on an hourly basis was approximately $455,000.00, and the dollar value of Morphy's engineering services on the same basis was approximately $80,000.00, for a total dollar value of $530,000.00. Morphy's work, therefore, represented 15% of the total value of the engineering services performed, entitling Morphy to compensation equal to 15% of the approximate $300,000.00 "cap" in the RTKL-CBM contract.
[3] Cited as authority for these equitable limitations was Houma Armature Works & Supply, Inc. v. Landry, 417 So.2d 42 (La.App. 1st Cir. 1982), a case decided not in an actio de in rem verso, but rather one in which "quantum meruit" principles, (which will be discussed hereinafter), were involved.
[4] In fact, CBM suffered substantial losses on the major subcontract because they had agreed in writing to the "cap." This may have prompted the district court not to increase CBM's losses by casting them in judgment for the full $78,613.00.
[5] Title IV of the Louisiana Civil Code of 1870, Of Conventional Obligations, consisting of Articles 1761 through 2291, was revised, amended, and reenacted by Acts 1984, No. 331, Section 1, effective January 1, 1985, to consist of Articles 1906 through 2057.
[6] La.Civ.Code art. 1811 states: "The proposition as well as the assent to a contract may be express of implied: Express when evidenced by words, either written or spoken; implied, when it is manifested by actions, even by silence or inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent."

In addition, article 1816 in pertinent part states: "Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract."
[7] La.Civ.Code art. 1903 states: The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect.
[8] Art. 1964. "Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from knowledge that they would be supplied by one of these sources."

Art. 1965. "The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
[9] The expression "quantum meruit" means "as much as he deserves." Black's Law Dictionary (5th Ed.1979).
[10] Bascle v. Perez, 224 La. 1014, 71 So.2d 551 (1954); Doll v. Albert Weiblen Marble & Granite Co., Inc., 207 La. 769, 22 So.2d 59 (1945); Skains v. White, 391 So.2d 1327 (La.App. 2d Cir.1980); Brummett v. Hamel's Dairy, Inc., 324 So.2d 502 (La.App. 2d Cir.1975); North Development Co., Inc. v. McClure, 276 So.2d 395 (La.App. 2d Cir. 1973); Swan v. Beaubouef, 206 So.2d 315 (La. App. 4th Cir.1968).
[11] Cited as authority for these limitations is Planiol, Chapter III, Section 937B (Unjust Enrichment).
[12] For a discussion of assumpsit in quantum meruit, see Travis v. Kennedy, Tex.Civ.App., 66 S.W.2d 444, 446 (1933).
[13] The amount stated in the demand letter was $90,674.00.
[1] See La.Civil Code articles 1811 and 1816. See also footnote 6 in the majority opinion.