SEXTON, Judge.
The plaintiff, J.W. Strozier, appeals the trial court judgment granting a motion for an involuntary dismissal of his suit to recover $7,870 from the defendant, Clay Water System, Inc., for the defendant’s alleged breach of a contract to provide water to the plaintiff. The trial court granted the motion for involuntary dismissal which was made by the defendant at the close of plaintiff’s case. We reverse.
The evidence presented at trial revealed that the plaintiff had purchased a house and land in Clay,' Louisiana, in 1971. Prior to the plaintiff’s purchase of the property, water had been provided to the previous owners of the house by the defendant. This arrangement between the parties continued after the plaintiff moved in, although it appears that a written agreement to that effect never existed. The plaintiff was not required to provide a water deposit; the previous owner’s deposit with the defendant was included in the plaintiff’s purchase price of the home. The plaintiff testified that he assumed his ex-wife informed the defendant that, after their purchase of the home, all future water bills should be addressed in plaintiff’s name. For approximately the next 15 years, water bills were sent to and paid by the plaintiff.
In late 1982, the plaintiff’s daughter and son-in-law, the Tomlins, purchased a trailer home and located it on the plaintiff’s property. Although the plaintiff was required to co-sign the loan needed by the Tomlins to purchase the property, title to the trailer was initially, exclusively, in the name of the Tomlins. The Tomlins made arrangements with the defendant to provide water to the trailer. The Tomlins put up a deposit, the defendant installed water lines and a water meter and water was thereafter provided to the trailer. The water meter for the trailer was apparently separate from, but located adjacent to, the water meter for the plaintiff’s house. The water bills were always paid by the Tomlins.
In 1985, the Tomlins filed for bankruptcy and moved out of the trailer. Although Mrs. Tomlin testified that their water deposit was eventually refunded, the water supply to the trailer was not immediately disconnected. The plaintiff assumed the mortgage note on the trailer and its ownership was transferred to him.
For two to two and one-half months in 1985, the plaintiff rented the trailer to a Mr. and Mrs. Bryan, with the understanding that the Bryans would be responsible for the utilities, including water. At trial, Ms. Barnett (the former Mrs. Bryan) testified that the water was already on in the trailer when they moved in, so they never contacted the defendant. During their stay at the trailer, the Bryans never received nor paid a water bill.
At some later date, the plaintiff’s son, James W. Strozier, Jr., made plans to move into the trailer. By this point, the water had been disconnected and the water meter for the trailer removed. When the plaintiff’s son contacted the defendant about reconnecting the water supply to the trailer, he-was informed that he would first be required to pay for the Bryans’ delinquent water bills and deposit.
Around this same date, the plaintiff and his son had connected a hose from the plaintiff’s house and used the house water to clean the trailer in anticipation of the *597 younger Strozier’s moving in. Strozier, Jr. was informed by one of the defendant’s employees, who happened to see the hose, that one residence could not supply water to a second residence. The hose was thereafter disconnected.
The plaintiff, after speaking with a representative of the defendant, attempted to locate the Bryans, but was unsuccessful. In February 1986, the defendant sent a certified letter to the plaintiff, apparently to inform the plaintiff that he was considered responsible by the defendant for the Bryans’ unpaid water bills and if such were not paid, the water to the plaintiff’s house would be disconnected.* The letter apparently additionally informed the plaintiff that disregard for the prohibition against supplying water from one residence to another could also result in the termination of his water services. The plaintiff, although twice receiving notice of this certified letter, never went to the post office to pick it up.
In March 1986, the defendant disconnected the water to the plaintiff’s house and the water meter was removed. Thereafter, plaintiff had to hand carry water to his house before he was able to have water wells dug. This lawsuit followed.
Following the presentation of plaintiff’s case, defendant moved for an involuntary dismissal of plaintiff’s lawsuit pursuant to LSA-C.C.P. Art. 1672. At that time, the trial court stated that it would take the motion under advisement and ordered the defendant to present its evidence. After the initial defense witness, the trial court granted the motion for dismissal based on its finding that the plaintiff had failed to prove the existence of a contract.
LSA-C.C.P. Art. 1672B provides:
Art. 1672. Involuntary dismissal
[[Image here]]
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
At the outset, we note that the trial court did not follow the strict mandates of Art. 1672B, i.e., to either render a judgment of dismissal immediately after the plaintiff’s case-in-chief or to decline to render judgment until the close of all the evidence. Clearly, the purpose behind the article is to promote judicial efficiency by obviating the need for the presentation of unnecessary evidence on behalf of the defense where the plaintiff, through his evidence, has failed to present a prima facie case of his entitlement to relief.
In the instant case, the defendant timely moved for a dismissal after the plaintiff’s case, but the trial court took the motion under advisement and did not order the dismissal until after the testimony of the initial defense witness. Considering the aforementioned purpose behind the article, we presume that the trial court, again in the interest of judicial efficiency, allowed the trial to conditionally proceed while it considered the defendant's motion. The issue was still whether the plaintiff, in his case-in-chief, had established a prima facie case of breach of contract. Thus, we assume, when it ordered the dismissal, the trial court, without considering the defendant’s evidence, found the plaintiff’s evidence insufficient to support his claim. We find this conclusion to be error.
In a bench trial, LSA-C.C.P. Art. 1672B requires a judge to evaluate whether a plaintiff has established his case by a preponderance of the evidence. Proof by a preponderance of the evidence means that, taking the evidence as a whole, the fact or cause sought to be proved is more probable than not. Fuller v. Wal-Mart Stores, Inc., *598 519 So.2d 366 (La.App. 2d Cir.1988); Fussell v. Louisiana Business College of Monroe, Inc., 478 So.2d 652 (La.App. 2d Cir.1985). The appropriate inquiries in the instant case are whether the plaintiffs evidence established more probably than not: (1) that there existed a contract between the plaintiff and defendant and (2) that the defendant breached that contract.
We find that the evidence presented by the plaintiff does show by a preponderance that there existed a contract between the parties and that the defendant breached that contract. Although the defendant places great import in the failure of the plaintiff to present evidence of a written contract to supply water, a contract is not limited to a written document. A contract, an agreement established by the mutual consent of the parties, may be entered into orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. LSA-C.C. Art. 1927. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989).
The evidence presented in plaintiffs case-in-chief clearly proves more probably than not the existence of a contract whereby the defendant would supply water to the plaintiff in exchange for monetary compensation by the plaintiff. Even in the absence of a written agreement, the evidence regarding the actions of each party, continuing for a period of 15 years, shows a contractual relationship between the plaintiff and defendant was formed and solidified. The trial court was clearly in error in finding there was no contract between the parties.
Likewise, the plaintiffs evidence shows that the defendant breached the contract by disconnecting the water supply to plaintiff in March 1986. In fact, the defendant acknowledged that on or about March 25, 1986, persons representing the defendant disconnected plaintiffs water meter. This acknowledgment appeared in the pre-trial order and hence generally served to limit the defendant from contesting this issue at trial. LSA-C.C.P. Art. 1551.
The defendant apparently sought to defend the plaintiffs breach of contract allegations by proving that plaintiff had initially breached the contract, either by supplying water from his residence to the trailer and/or by failing to pay the trailer’s delinquent water bills, assuming it was plaintiffs obligation to do so. If the trial court based its decision to grant the involuntary dismissal on the plaintiffs failure to justify his actions prior to his water being disconnected, such was error. Once the plaintiff has made a prima facie case that there was a contract and the defendant breached that contract, which showing we find the plaintiff has made, the burden then shifts to the defendant to prove the plaintiffs actions constituted the initial breach of the contract. See, Fussell v. Louisiana Business College of Monroe, Inc., supra.
In conclusion, we find the plaintiff has shown by a preponderance of the evidence that there existed a contract between the parties and that defendant breached that contract. Therefore, the trial court judgment granting the defendant’s motion for an involuntary dismissal was erroneous. Accordingly, we reverse the trial court judgment and remand the case to the trial court for further proceedings and the presentation of additional evidence. The costs of this appeal are assessed to defendant-ap-pellee.
REVERSED AND REMANDED.

 This letter was not introduced during the plaintiff's case-in-chief, which, as we discuss infra, is the only evidence to be considered in this appeal. The nature of the letter may be gathered, however, from defendant's cross-examination of the plaintiff.