JiBOWES, Judge.
Plaintiff, Marty Bordelon d/b/a Pyramid Cleaning Company (“Pyramid”), appeals a judgment of the First Parish Court for the Parish of Jefferson awarding him $1,440.00, plus interest and costs, with the exception that each party bear its own expert fees, alleging that this is an insufficient amount; and that the trial court erred in not awarding to him attorney fees and expert witness fees. We disagree and, therefore, affirm as follows.
Pyramid filed suit against Comeaux Furniture and Appliance Company (“Comeaux”) on an open account. Pyramid averred that pursuant to an oral contract, Comeaux hired Pyramid to clean a portion of carpeting 12in its store on Veterans Highway, which Pyramid did, and for which it was paid at the rate of twenty cents per square foot of carpeting, or $186.16. After payment for the initial work, Comeaux requested cleaning to additional portions of carpeting, which plaintiff again completed. An invoice of $3,630.64 was submitted to defendant, which defendant failed to pay. Pyramid avers that Comeaux is liable under the oral contract, and alternatively, under the principles of quantum meru-it and/or unjust enrichment for payment of the invoice, plus interests, costs, and attorney fees as provided by La. R.S. 9:2781.

EVIDENCE AND TESTIMONY

At trial, Bordelon testified that in his eleven years of self-employment in the carpet cleaning business, it has been his normal practice to charge by the room for residential cleaning and by the square foot for commercial cleaning. At the request of Comeaux, Bordelon went with his assistant, Jay Cadis, to the store, and Comeaux showed them the area that he wanted them to clean. Borde-lon and Cadis measured the area, figured the square footage and gave a price of $186.16. That price reflected the charge of $.20 per square foot, plus $2.00 per stair, and 4% tax. Bordelon told Comeaux at the time that while the price may have seemed high, it was a lot of work so he would be charged the twenty cents per square foot.
*1034 After the first section was completed, Co-meaux was very satisfied and requested they come back and clean the rest of the store. They were to |3clean the open areas, and not to move the heavy furniture. It was Borde-lon’s understanding that the cleaning would be on the same basis as that of the first, and there was no discussion of a different price.
On attempting to clean on the first night, Bordelon and his assistant found it took longer than anticipated because of shampoo residue in the carpet, because the heater of his machine was not working properly, and because this was the dirtiest part of carpet. On the second night, he brought his assistant and another cleaner, Dave Chryssoverges of Econo Clean, to help.
According to plaintiff, an hourly rate for the work was never discussed. The two invoices for the subsequent work was computed on the twenty cents per square foot basis; however, the invoices introduced into evidence did not contain the area calculation. However, plaintiff did introduce a paper with his square footage calculation. Bordelon testified initially that he gave the written estimates to Comeaux prior to beginning the job. On Day one he and his assistant worked about four hours to clean the carpet in the front of the store, about 720 square feet; it took five hours for four people on Day two to clean and on Day three it also took about five hours (for four people). Some of this cleaning was in areas recleaned at the request of Comeaux.
Usually, Bordelon could clean 1,000 square feet of carpet per hour. It was faster to work upstairs in a wider area because it wasn’t as soiled, and phe did not have to maneuver in and around furniture. On rebuttal, Bordelon was adamant that he computed precisely the square footage for the first night’s job. He estimated that he got to the job at about 8:00 p.m. and left around 2:00 a.m.
On cross examination, Bordelon stated that he only measured the carpet prior to cleaning on the first day (720 square feet); on the second and third day, he measured everything he cleaned after the cleaning.
Jay Cadis, who worked with Bordelon, testified that Bordelon measured the area and he would write down the footage. He was “pretty sure” an estimate based on those numbers was given. Bordelon never charges by the hour, but he did tell Comeaux he would charge $.20 per square foot. He didn’t remember how much Bordelon paid him the first night, but on the second and third night she received between $100.00-130.00.
Norman Comeaux testified for the defendant that he did not remember being quoted a price for the cleaning by the square foot or by the hour, but was told that the first day’s cleaning would cost between $150.00-200.00 to clean a certain area. The first time he saw the first bill was when it was presented for payment after the job was done, and he did not recall previously seeing a written estimate. Comeaux assumed that Bordelon charged $200.00 per night, and he could hire him to spend that same amount of time to clean other areas of the store. On days two and three Isthere was more machinery and more men, although they spent the same amount of time, about four hours. He did recall seeing Bordelon measuring at the time of the second day, but was never told how many square feet were to be cleaned. He did not ask Bordelon anything about the price, and did not see the bill until after completion of the work. It was “common sense” that Bordelon would charge by a measuring device, but Comeaux did not know what the charge would be.
George Ferris testified as an expert on behalf of plaintiff on general carpet cleaning, restoration, and practices within the industry for pricing. He stated that there is a “blue book” or pricing guide for all of the trades in the carpet industry for certain types of services. After looking at the store, Ferris testified that the $.20 per square foot price was fair or low for what he considered to be a restorative cleaning. According to the witness, the blue book showed that the $.20 price was for light cleaning. In the course of business, Ferris only quotes prices by square footage for commercial jobs. Like Mr. Bor-delon, he did not like to quote the square footage unless specifically requested, because it takes a lot of time to measure.
*1035 Ferris felt that when furniture has to be moved, a reasonable price would be $.25 per square foot. The standard in this area is to charge by the room for residential jobs, and by the square footage in commercial jobs. He had never heard of charging by the hour. Ferris felt that the price | (¡charged by Borde-lon for the work done was fair, and that he would have charged more.
Mr. Bob Rispoli was accepted as defendant’s expert witness. He testified that when he works on a square footage basis, he measures the area ahead of time so as to let the customer know what to expect. He sometimes quotes the footage to the customer. He only does a job by the hour if it is spot cleaning. The industry standard is to do a commercial job by the square foot only, and Rispoli also does residential jobs by this standard. It is not an industry standard to do jobs without giving prices in advance.
He felt that a range of charge for the Comeaux job would be between $.19 and $.20 per square foot, or perhaps a little higher. If the job had to be done at night and furniture had to be moved, the price could be higher still. He had never heard of carpet cleaners charging by the hour. Upon questioning by the court, Rispoli stated that if he knew exactly how many hours it took to do a job, he could make money charging $27.00 or $28.00 per hour.
Again upon questioning by the court, Ris-poli stated that if he had failed for whatever reason to give a price in advance, he would make money at $36.00 per man hour. He also testified that it would be difficult to compute a price by the square foot before cleaning where the customer indicates that there is a lot of furniture to be moved.
|7The parties stipulated to attorney fees of $474.44 (to the date of trial) and court costs of $160.00.

ACTION OF THE TRIAL COURT

The court, having viewed the store personally, stated that $.20 per square foot was a fair price, but that the defendant did not legitimately expect the bill which he received, although he made no effort to find out what the cost would be. The court believed Co-meaux’s version of events, and found that the price of the first night’s work was in fact quoted with no discussion as to how the price was derived.
In its reasons for judgment, the court determined that no agreement on price was discussed nor agreed to prior to the work done on days two and three, and at no time was the price agreed to on a per hour or per square foot basis. It was further found that it would be “virtually impossible” to check the square foot calculation done by the plaintiff, because the work involved moving around innumerable pieces of furniture and that the only fair approach to a quantum meruit calculation would be on a per man hour basis that guarantees plaintiff a reasonable, but not an extreme profit. The court found that the undisputed amount of man hours involved was 40 hours and awarded damages at the rate of $36.00 per hour. Costs and interests were also awarded, but each party was to pay its own expert witness fees. From this judgment plaintiff appeals.
lain brief, Bordelon argues that the trial court erred in applying the principle of quantum meruit to arrive at a price; and that the court erred in failing to award attorney fees under La. R.S. 9:2781, and in not taxing all expert witness fees to the defendant.

ANALYSIS

A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. There are four necessary elements for a valid contract: capacity, consent, object, and lawful cause. La. C.C. arts. 1918, 1927, 1966, and 1971. In other words, the parties must have the capacity to contract and give their consent freely for a certain object, and the contract must have a lawful purpose. Both parties must be bound in order for there to be a contract. Leger v. Tyson Foods, Inc. 95-1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that, under the circumstances, is clearly indicative of consent. La. C.C. art. 1927.
*1036 We find that all of these requisites were met in the present case. There is no dispute between the parties that a contract existed between Pyramid and Comeaux for the carpet cleaning. Comeaux acknowledged that he requested Pyramid to clean the store carpeting, and Pyramid agreed to do so. As the testimony and documentary evidence attests, the trial court Igeorrectly found that there was, however, no agreement as to the price. The absence of an agreed upon price does not vitiate the contract, but rather the law implies that the plaintiff will be paid a reasonable sum for his services. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989); Simon v. Fasig-Tipton Co., 92-173 (La.App. 3 Cir. 3/22/95), 652 So.2d 1351.
In Morphy, supra, the Supreme Court determined that in the presence of a valid contract without a stated price, the remedy at law is to sue on the contract and have the court determine the remuneration to be received for the services rendered. The court, quoting earlier jurisprudence, found:
Where there is a contract for the rendering of services but there is no agreement for the price or compensation, the plaintiff is entitled to be paid for the services rendered under the principles of La C.C. art.1965.
Morphy, supra, at 574.
The court continued that the remedy available to the plaintiff was in quantum me-ruit, as distinguished from the substantive (civilian) claim of actio de in rem verso (unjust enrichment). The existence of a claim on an express or implied contract precludes application of the unjust enrichment theory, because the potential claim constitutes a practical remedy at law available to the impoverishes. Morphy, supra; Deubler Elec. Inc. v. Knockers of Louisiana, Inc., 95-372 (La.App. 5 Cir. 11/15/95), 665 So.2d 481.
| ipThe contract without an agreed upon price must be interpreted, as requiring that plaintiff be paid a reasonable sum for his services. Morphy, supra. A reasonable sum includes actual cost, including general overhead attributable to the project, and a reasonable profit. Morphy, supra.
Plaintiff avers that the testimony clearly shows the customary commercial charge in the industry is by the square foot, and that $.20 a square foot is a fair price.
La. C.C. arts. 2053-55 (which reproduce much of Civil Code Article 1965 utilized in Morphy, supra) state:
Art.2053. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.
Art.2054. Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
Art.2055. Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.
The present ease presents a problem in that plaintiffs invoices do not evidence the basis upon which he charged defendant for the cleaning, so that the “other contract of a like nature,” the first transaction between the parties, does not serve as an interpretive tool in these proceedings. | nRegarding the conduct of the parties before and after the formation of the contract, the court found as a matter of fact that at no time did defendant believe it would be charged by the square foot, and “was in actual shock over the final bill” and we cannot say that this finding was clearly wrong. Plaintiff testified that he measured the square footage after the cleaning, but there is no evidence of record that either the measurements, or the method of calculation was communicated to the defendant. Accordingly, we find that the evidence of record does not illuminate very much the actual conduct of the parties vis-a-vis each other.
While there was testimony that such contracts are generally conditioned on a square footage basis, there was also testimony by defendant’s expert witness Rispoli that upon failing to give a price in advance, a fair *1037 profit could be made charging $36.00 per man hour. The trial court chose to give greater weight to this witness—and we cannot say that this was an abuse of discretion. Therefore, we hold that the price fixed by the trial court was reasonable in light of the balance of community custom and equity between the parties, and was also a reasonable sum for the services rendered. Accordingly, this portion of the judgment is affirmed.

¡ATTORNEY FEES

It is well accepted in Louisiana that attorney’s fees are not allowed except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). Attorney’s fees statutes must be construed strictly because the award of attorney’s fees is exceptional and penal in nature. Cracco v. Barras, 520 So.2d 371 (La.1988); Spear v. Tran, 96-1490 (La.App. 4 Cir. 9/18/96), 682 So.2d 267.
La. R.S. 9:2781 provides that reasonable attorney fees should be granted when a judgment on an open account is rendered in favor of the plaintiff. Under the statute:
... open account’ includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions....
A creditor suing on an open account must prove that the debtor contracted for the sales on an open account. Metrospec Computers & Supply, Inc. v. R.A. Roldan & Company, Inc., 94-0102 (La.App. 4 Cir. 9/29/94), 643 So.2d 833, 835. For there to be an action on an open account, there must necessarily be a “meeting of minds” or clear understanding between the parties. F. Christiana & Co., Inc. v. Matt’s Grocery, Inc., No. 2, 95-2073 (La.App. 4 Cir. 5/8/96), 674 So.2d 419; 13Blackie’s Rental Tool & Supply Co., Inc. v. Vanway, 563 So.2d 350, 353 (La.App. 3 Cir.1990).
In the present case there is no written contract establishing an open account between the parties; and there was no determination, agreement, or even discussion as to price and no meeting of the minds to establish an open account. Consequently, we hold that plaintiff is not entitled to attorney fees under La. R.S. 9:2781; and in the absence of any other statutory authority, we hold that plaintiff is not entitled to attorney fees in the present case.

COSTS

On review, a trial judge’s assessment of costs can only be reversed by this court upon a showing of an abuse of discretion. Courtney v. Winn-Dixie Louisiana, Inc. 447 So.2d 504 (La.App. 5 Cir.1984); Purcell v. State Farm Insurance Company, 417 So.2d 16 (La.App. 4 Cir.1982).
La. C.C.P. art. 1920 provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Appellant cites La. R.S. 13:3666 as mandating assessment of its expert fees against Comeaux. This Court has previously found that while it is the general rule to tax the party cast in judgment, the trial judge may h4assess the costs of a suit in any equitable manner. Courtney, supra; Ashley Enterprises, Inc. v. Esplanade Plaza Co., 425 So.2d 1010 (La.App. 5 Cir.1983).
Our review of this case discloses no abuse of discretion in the determination by the trial court here that each party bear its own costs. Therefore, that part of the judgment will not be disturbed.

DECREE

For the foregoing reasons, the judgment in favor of plaintiff is affirmed. Costs of this appeal are taxed to appellant.
AFFIRMED.