554 So.2d 1339 (1989)
Karen F. LAWRENCE
v.
James A. DUNAWAY, et al.
No. 88 CA 1773.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*1340 Wilson C. Krebs, Covington, for plaintiff-appellee Karen F. Lawrence.
Jan P. Jumonville, New Orleans, for defendants-appellants James A. Dunaway & Commercial Union Ins. Co.
Before COVINGTON, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
This is an appeal from a judgment notwithstanding the verdict, LSA-C.C.P. art. 1811, which raised a jury's damage award and reallocated fault. State Farm Mutual Automobile Insurance Company (defendant), Karen F. Lawrence's (plaintiff) uninsured motorist carrier, appeals.
FACTS
Plaintiff's vehicle was struck in the rear by a pickup truck driven by James A. Dunaway on Louisiana Highway 21 (La. # 21) in Washington Parish. The accident occurred on October 11, 1984. Plaintiff had completed her shift as a tower guard at the Department of Corrections (DOC) facility in Angie, Louisiana, at approximately 5:45 that afternoon. There were no visibility problems; the weather was clear. Dunaway, likewise, had completed his shift as a DOC employee at the prison. They had both turned onto La. # 21, a two-lane highway, from the prison access road. Plaintiff was in the lead, and had travelled approximately two-tenths of a mile (according to Dunaway) when the accident occurred. Plaintiff testified that she saw one large dog and a number of puppies on the opposite shoulder to her left. A witness, Barry Knight, who was approaching in the opposite lane, saw the dogs on the shoulder and then in the middle of plaintiff's lane. Dunaway saw a dog and puppies retreating down the highway embankment following the accident. The dogs were thus on one side of the highway prior to the accident and on the other side of the highway afterwards. The only reasonable conclusion is that at some point, the dogs crossed the highway. Knight testified that one of the puppies stopped in plaintiff's lane. Plaintiff testified that she saw the dogs, began slowing down, and had come to almost a complete stop when Dunaway rear-ended her vehicle. Dunaway testified that plaintiff "slammed on her brakes."
Dunaway testified that both automobiles were travelling approximately 45 to 50 miles per hour and that he was four car lengths behind plaintiff, but that as soon as he "realized" plaintiff had "slammed on her brakes" he "slammed on [his] brakes and tried to swerve." The evidence reflects that Dunaway's truck collided with the right portion of plaintiff's rear bumper. There was no expert testimony offered regarding braking distances and perception delays for the speeds and distances involved. *1341 Plaintiff, however, was struck in the rear, so Dunaway was presumed to be negligent. LSA-R.S. 32:81; Mart v. Hill, 505 So.2d 1120 (La.1987).
The jury's verdict form assessed plaintiff with 48% comparative fault and Dunaway with 32%, and assessed plaintiff's damages at $25,000.00. Plaintiff had received $20,000.00 before trial in settlement from Dunaway's insurer.[1] When questioned by the trial court as to the remaining 20% fault, the jury foreman alluded to the dogs.
The trial court granted plaintiff's motion for a judgment notwithstanding the verdict, decreasing plaintiff's assessment of fault to 25% and increasing the assessment of damages to $60,000.00 (subject to a $25,000.00 credit for the limits of Dunaway's policy). Thereafter, defendant submitted a pleading styled "Motion to Clarify Judgment on Motion Not Withstanding [sic] the Verdict." The motion requested a credit for the stipulated $5,479.63 amount paid under defendant's medical payments policy provision. The motion was denied.
Defendant urges two assignments of error: (1) that the trial court erred in granting the judgment notwithstanding the verdict; and (2) that the trial court erred in denying the motion to clarify the judgment.
LAW
The jury failed to assess 100% fault between the only actors in this occurrence capable of being assessed with fault. There is absolutely no evidence as to the existence of an owner of the dogs. Dogs are not subject to an assessment of fault under LSA-C.C. art. 2315. See LSA-C.C. art. 2321 (providing in part, "[t]he owner of an animal is answerable for the damage he has caused....") (Emphasis ours.) The jury committed an error of law in not assessing 100% of the fault. The judgment notwithstanding the verdict was an appropriate means to redress this error. See Scott v. Hospital Service District No. 1, 496 So.2d 270, 273 (La.1986) (when there is either no genuine issue of fact or when "reasonable minds could not differ," the judgment notwithstanding the verdict is appropriate).
The trial court assessed plaintiff's fault at 25% without specifically decreeing Dunaway's adjusted percentage of negligence. Defendant contends Dunaway's fault as assessed by the jury (32%) was not changed, leaving a greater percentage (42%) unassessed. It is clear from the language of the judgment that plaintiff's $60,000.00 award is to be reduced by her 25% comparative fault and the $25,000.00 credit for Dunaway's policy limits. The remainder represents the judgment against defendant. Moreover, defendant's motion to clarify the judgment brought before the trial court did not request any clarification as to the percentage assessed Dunaway. Defendant admits in its brief "[i]t is clear that there were no other persons who are answerable, in solido, or who were found negligent or who could be assigned negligence in this case," but then asserts that Dunaway "cannot be assigned negligence for the difference between 100% and 57% [plaintiff's 25% plus Dunaway's prejudgment notwithstanding the verdict 32%]." The argument is unpersuasive. We believe the judgment clearly assesses 100% fault: 25% explicitly to plaintiff and 75% implicitly to Dunaway.
The trial court lowered plaintiff's fault assessment and raised the damages assessment. As noted above, Dunaway, the following motorist in a rear-end collision, is presumed to be negligent. Mart, 505 So.2d 1123. Knight testified that he saw "smoke" from Dunaway's tires immediately before the collision. The same witness testified that plaintiff did not brake abruptly. Dunaway's testimony is simply that he did not have enough time to stop. In light of the presumption of negligence, we believe reasonable minds could not differ that Dunaway failed to exculpate himself, thus the judgment notwithstanding the verdict should stand. The trial court's assessment of plaintiff's fault is not an abuse of discretion inasmuch as plaintiff testified that she did not look in her rearview *1342 mirror until she had almost come to a stop. See LSA-R.S. 32:104(C).
DAMAGES
With respect to the damages assessment, we note that despite the fact that plaintiff indicated to Dunaway immediately after the accident that she was not injured, she went to the emergency room on the day of the accident and consulted her husband's family doctor the following day. She testified that she has persistent neck pain and headaches. She began consulting Dr. David Wyatt Aiken, Jr., an orthopedic surgeon, on January 2, 1985. She exhibited muscle spasm (an objective symptom), tenderness, and pain in her right arm. Plaintiff was treated by Aiken through the date of the trial, a period of approximately three years, over which time plaintiff saw Aiken at least fourteen times.[2] On seven of these occasions, plaintiff exhibited mild to moderate muscle spasms. Aiken ordered a myelogram, a CAT scan, and a discogram. Both the myelogram and the CAT scan were negative. A discogram revealed some dye leakage which Aiken interpreted as a "tear in the back of the disc." He testified that a tear in the ligament holding that particular disc in place was visible on the x-ray and that same was consistent with plaintiff's complaints. Additionally, Aiken testified that plaintiff complained of increased pain during the procedure performed on that particular disc.
Defendant's orthopedic specialist, Dr. Harold M. Stokes, found no muscle spasm and a full range of motion the one time he saw plaintiff. Stokes found the CAT scan and myelogram normal, as did Aiken, and testified that the findings on the discogram were not reliable. Stokes performed no tests.
Aiken testified that plaintiff is now more susceptible to injury, may be a candidate for future surgery, and cannot perform a job which requires climbing stairs and firing a weapon, as her DOC job had required.
Plaintiff had been working with DOC for one and one-half years. The record shows that her gross pay was approximately $1,000.00 per month at the beginning of 1984. She worked only one day following the accident. She testified that due to pain and headaches, she did not believe she could fulfill her duties as a prison guard. Plaintiff began working full time at Wal-Mart greeting customers in July of 1985 and discontinued her employment there in December of 1986, due to pregnancy. She remained home for four months and resumed her job at Wal-Mart in April 1987, working approximately 18 hours per week. She was laid off in January of 1988.
While the record is inexact, it is clear that plaintiff experienced a significant decrease in wages from July 1985 until she discontinued her employment in December 1986 due to pregnancy. Plaintiff resumed employment four months later, in April 1987, at wages still significantly lower than at DOC. In addition, plaintiff has experienced pain on an intermittent but nevertheless consistent basis since the accident. Plaintiff settled with Dunaway for $20,000.00 out of the $25,000.00 maximum coverage which we find does not compensate plaintiff to the full extent of her damages. The trial court did not err in granting the judgment notwithstanding the verdict as to the jury's $20,000.00 damage award and did not abuse its discretion in raising the award to $60,000.00.
Defendant's argument with respect to credit for the medical expenses necessarily depends upon the amount of the judgment in relation to defendant's policy limits and the language of the policy. The motion for clarification was denied by the trial court because defendant's policy was determined to be ambiguous. The uninsured motorist provision at issue reads:
5. The most we pay will be the lesser of:
a. the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person or organization *1343 who is or may be held legally liable for the bodily injury; or
b. the limits of liability of this coverage.
The trial court considered this language thoroughly during the hearing conducted on defendant's motion for clarification, reciting this language and holding that it was not sufficiently clear that the policy contemplated that defendant, in its capacity as insurer under medical payments coverage, would qualify as an "organization ... legally liable for the bodily injury." The court reasoned that defendant was contractually liable in its capacity as medical payments insurer.
The language in defendant's policy is not as specific as that in White v. Patterson, 409 So.2d 290, 293 (La.App. 1st Cir.1981), writ denied, 412 So.2d 1110 (1982) (the pertinent policy language reading "[t]he company shall not be obligated to pay under [the uninsured motorist coverage] expenses for medical services paid or payable under the medical payments coverage of this policy"). See also Webb v. Goodley, 512 So.2d 527, 531 (La.App. 3d Cir.1987) (providing expressly that amounts payable under medical payments coverage be reduced by amounts paid or payable for the same expenses under liability or uninsured motorist coverage.)
Each contract of insurance must be construed as its own terms provide. White, 409 So.2d at 293. The language of the policy must allow the credit. Id. at 294. The ambiguity here must be construed against defendant, as the trial court did. Additionally, the judgment itself awards $60,000.00 in globo, without expressly including in this amount special damages. In White the court found that the jury clearly included the medical payments. Id. at 293.
After carefully considering the issue of credit for these medical payments, we cannot say that the trial court was clearly wrong in denying them after finding the pertinent policy language to be ambiguous. For the reasons assigned herein, the decision of the trial court is affirmed. Costs of this appeal are taxed to defendant.
AFFIRMED.
NOTES
[1] The limits of Dunaway's liability policy were $25,000.00.
[2] There is some discrepancy in the record as to the number of visits. Aiken testified specifically to fourteen dates; however, a bill submitted into evidence indicates sixteen office visits.