633 So.2d 682 (1993)
Rogers B. BOUDREAUX
v.
COLONIAL LLOYD'S INSURANCE COMPANY, Hung V. Nguyen, Gigi T. Nguyen, and Aetna Casualty & Surety Company.
No. 92 CA 2326.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*683 Keith Labat, Thibodaux, for plaintiff and appellant-Rogers Boudreaux.
Joseph A. Reilly, Jr., Houma, for defendant and appellee-Auto. Ins. Co. of Hartford, Conn.
George W. Pugh, Jr., Metairie.
Before WATKINS, SHORTESS and FOGG, JJ.
FOGG, Judge.
In this personal injury action the defendant uninsured/underinsured motorists (UM) insurer appeals the granting of a new trial. Additionally, based on the jury's verdict in the new trial, Mr. Boudreaux appeals the trial court's failure to award him damages for mental pain and suffering as well as the trial court's award of a credit to the defendant UM insurer. We affirm.
On October 2, 1989, Rogers B. Boudreaux was a passenger in a car owned by him and driven by his wife, Rosaline M. Boudreaux. The car was traveling south on Louisiana Highway 24 in Terrebonne Parish when a car driven by Gigi Nguyen made a U-turn from the shoulder of the highway, striking the Boudreaux vehicle and allegedly injuring the Boudreauxs. The plaintiffs, Mr. and Mrs. Boudreaux,[1] filed suit against Ms. Nguyen; Hung Nguyen, the owner of the car; Colonial Lloyd's, Mr. Nguyen's insurer; and Automobile Insurance Company of Hartford, Connecticut (AIC)[2], Mr. Boudreaux's UM insurer. In addition to damages, the plaintiffs also sought penalties and attorney's fees from AIC, contending that its actions were arbitrary and capricious. AIC filed a cross claim against Ms. Nguyen for any UM payments it might have to make, as well as a subrogation claim against her for medical payments it had made to the plaintiffs.
After trial, the jury found that Ms. Nguyen's negligence caused both of the plaintiffs' damages but only awarded Mr. Boudreaux $563.22 for past medical expenses. The jury further found that AIC was not arbitrary and capricious in handling the Boudreauxs' claims, and that AIC was not entitled to reimbursement from Ms. Nguyen for medical payments made. The judge rendered judgment in conformity with the jury's verdict, and the plaintiffs moved for a judgment notwithstanding the verdict (JNOV). The trial judge denied this motion, but granted a new trial under LSA-C.C.P. art. 1811 B. Both of the plaintiffs filed a motion to dismiss with prejudice all the defendants except AIC. Mrs. Boudreaux then dismissed her claims against AIC; Mr. Boudreaux waived his claim against AIC for penalties and attorney's fees. Thus, the only claim remaining for trial was Mr. Boudreaux's claim against his own UM carrier.
Another jury trial was held, and the jury found that Ms. Nguyen was liable, and awarded Mr. Boudreaux the following: $2,600 for past medical expenses, $12,000 for future medical expenses, $27,000 for past and future physical pain and suffering, and $27,700 for permanent disability; the jury did not award Mr. Boudreaux any damages for past and future mental pain and suffering. The trial judge rendered judgment for Mr. Boudreaux for damages totalling $70,000, and then granted a credit of $12,035 to AIC.
AIC contends that the trial judge erred in granting the plaintiffs a new trial. LSA-C.C.P. art. 1811 B states, in pertinent part, "If a verdict was returned the court may allow the judgment to stand or may *684 reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict." A trial court may deny a motion for JNOV and grant a motion for a new trial because the verdict is contrary to the law or evidence. See Petitto v. McMichael, 588 So.2d 1144 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1201 (La.1992); Pellerin v. Tudor Construction Company, 414 So.2d 403 (La.App. 1st Cir.), writ denied, 420 So.2d 455 (La.1982).[3]
A new trial is warranted "when the verdict or judgment appears clearly contrary to the law and the evidence." La.C.C.P. art. 1972(1). Additionally, "a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." La.C.C.P. art. 1973. A trial judge has much discretion in determining whether or not to grant a new trial. Petitto v. McMichael, 588 So.2d 1144 (La.App. 1st Cir.1991), writ denied, 590 So.2d 1201 (La.1992).
At the hearing on the motion for JNOV, the trial judge recognized AIC's contention that the jury's award of $563.22 for past medical expenses could represent the past medical expenses for which Mr. Boudreaux had not been compensated, since his past medical expenses totalled $2,598.38 and AIC had paid him $2,035.16. The trial judge stated that the jurors knew how much compensation the plaintiffs had already received from the liability insurer and may have believed it to be adequate, and were concerned that any damages awarded would be "new money." If this was the basis for the jury's award, the trial judge believed that it erred because the jury should have included any previous payments by the insurer in any damages awarded the plaintiffs, and the defendant would have been entitled to an offset against the total award. The trial judge also said that the jury's verdict could have indicated that the jurors felt that the plaintiffs were entitled only to $563.22, which would be improper under the jurisprudence involving awards of special damages where no general damages were awarded.
This case is distinguishable from that of Pattison v. Valley Forge Insurance Co., 599 So.2d 873 (La.App. 4th Cir.), writ denied, 604 So.2d 1001 (La.1992), cited by AIC to support its position. In Pattison, the jury found that the plaintiff suffered injuries but awarded no damages where it was aware that the plaintiff had been unconditionally tendered $40,000 and his past medical expenses had been paid; the appellate court held that the jury's findings were not inconsistent because the jury apparently believed that plaintiff had been adequately compensated by the insurance monies received before trial. Unlike the case at bar, in Pattison the jury did not award the plaintiff any damages and the verdict form reflected that a $40,000 credit would be deducted from the total damages awarded. In this case, the trial judge instructed the jury that any evidence concerning settlement negotiations between the plaintiffs and the defendant insurer was not to be considered in determining the amount of damages to be awarded the plaintiffs. Thus, in the case at bar, it is less apparent from the jury findings than it was in Pattison that the jury believed the sum previously paid to the plaintiffs adequately compensated them for their damages; the trial judge did not abuse his discretion in granting a new trial, since the jury's findings could also be interpreted as a determination that the plaintiff was only entitled to some past medical expenses, a finding inconsistent with a refusal to award general damages. Marcel v. Allstate Insurance Co., 536 So.2d 632 (La. App. 1st Cir.1988), writ denied, 539 So.2d 631 (La.1989).[4] Therefore, we conclude the trial *685 judge did not abuse its discretion by granting a new trial.
Mr. Boudreaux contends the jury erred in failing to award him damages for mental pain and suffering while awarding him damages for medical expenses, physical pain and suffering, and permanent disability. In the assessment of damages in personal injury cases, much discretion must be left to the jury. La.C.C. art. 2324.1. A reviewing court may disturb an award of general damages only after an analysis of the facts demonstrates that the trier of fact abused its "much discretion" in granting the award. See Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
After the accident, Mr. Boudreaux cut his hand while trying to pry the fender of his car away from the tire and required stitches. He also sought treatment for pain in his lower back and right ankle. His back injury was diagnosed as lumbar strain; his ankle injury was an aggravation of arthritic changes and bone spurring in the area of the subtalar joint of his ankle. Surgery to fuse the subtalar joint was recommended, although Mr. Boudreaux had not yet undergone surgery at the time of trial. In support of his contention that he suffered severe mental pain and anguish, Mr. Boudreaux refers to evidence concerning the limits imposed on his activities with the granddaughter he and his wife were raising. Mr. Boudreaux testified that since the accident, he could not take her to the zoo, on vacation, or to New Orleans as he and his wife had in the past.
We find that any damages due to mental anguish were covered in the awards for pain and suffering and disability, and we conclude that the jury did not abuse its much discretion. See Perez v. State of Louisiana, through Department of Transportation and Development, 578 So.2d 1199 (La.App. 4th Cir.), writ denied, 581 So.2d 706 (La.1991).
Mr. Boudreaux contends that the trial judge erred in granting a credit of $12,035, $10,000 of which represents the tortfeasor's liability coverage and $2,035 of which represents the medical payments AIC made to Mr. Boudreaux. As to the $10,000 credit, the plaintiff introduced into evidence the Colonial Lloyd's policy, which showed that the underlying liability coverage was $10,000. Mr. Boudreaux also introduced into evidence the AIC policy, which stated that under its UM coverage, AIC would pay compensatory damages which a covered person was legally entitled to recover from the owner or operator of an uninsured motor vehicle due to bodily injury sustained by a covered person and caused by an accident; an uninsured motor vehicle is defined as one "[t]o which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the covered person is legally entitled to recover as damages." Therefore, AIC's coverage does not commence until Mr. Boudreaux's damages exceed $10,000.
UM coverage is "excess" coverage, and a plaintiff has a right to receive from a UM insurer only that portion of his damages which exceeds the limits of the tortfeasor's liability insurance; even though the trial court might use the word "credit," its judgment does nothing more than determine the amount by which a plaintiff's total damages exceed the tortfeasor's liability insurance limits. White v. Patterson, 409 So.2d 290 (La. App. 1st Cir.1981), writ denied, 412 So.2d 1110 (La.1982).[5] Because the plaintiff introduced *686 the Colonial Lloyd's policy into evidence showing the underlying coverage of $10,000, it was not necessary for AIC to introduce into evidence proof of payment to the plaintiff by Colonial Lloyd's. In determining the amount a UM carrier must pay, the relevant amount is the amount of the tortfeasor's policy limits rather than the actual amount received by a plaintiff. Edmonds v. Shelter Mutual Insurance Co., 508 So.2d 211 (La.App. 3d Cir.1987). Therefore, the trial judge did not err in granting AIC a credit for $10,000.
As to the credit for medical payments, according to the jurisprudence, where a plaintiff's total damages do not exceed the UM policy limits, and the language of the policy allows such, the UM carrier is entitled to a credit for any amount which it has paid the plaintiff under the medical payments coverage. Barnes v. Allstate Insurance Co., 608 So.2d 1045 (La.App. 1st Cir.1992); White v. Patterson, 409 So.2d 290 (La.App. 1st Cir. 1981), writ denied, 412 So.2d 1110 (La.1982). Under the Medical Payments portion of the AIC policy, "[a]ny amounts otherwise payable for expenses under this [medical payments] coverage shall be reduced by any amounts paid or payable for the same expenses under Part A [liability coverage] or Part C [UM coverage]." This language is more specific than that cited from Lawrence v. Dunaway, 554 So.2d 1339 (La.App. 1st Cir.1989); there a credit for medical payments was denied under a UM provision stating that the most the UM insurer would pay would "be the lesser of: a. the difference between the amount of the insured's damages for bodily injury, and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or b. the limits of liability of this coverage." While the AIC policy also contains this language in the UM section, it contains the additional language previously discussed in the Medical Payments section. Therefore, the trial judge was not clearly wrong in allowing the credit for the medical payments made by AIC. Mr. Boudreaux's assignments of error have no merit.
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal to be assessed equally against AIC and Mr. Boudreaux.
AFFIRMED.
NOTES
[1] Mr. Boudreaux amended his original petition to add Mrs. Boudreaux as a plaintiff.
[2] Automobile Insurance Company of Hartford, Connecticut, was erroneously referred to in the plaintiffs' petition as Aetna Casualty and Surety Company.
[3] The standards for determining whether a party is entitled to a JNOV or a new trial differ. A trial court can grant a JNOV only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a contrary verdict. In considering a JNOV, the trial judge must construe all evidence and reasonable inferences to be made therefrom in favor of the party opposing the motion, and the trial judge cannot weigh the evidence, pass on the credibility of witnesses, or substitute its own judgment for that of the jury. Petitto v. McMichael, 588 So.2d 1144 (La.App. 1st Cir. 1991), writ denied, 590 So.2d 1201 (La.1992).
[4] We note that in Marcel v. Allstate Insurance Co., 536 So.2d 632 (La.App. 1st Cir.1988), writ denied, 539 So.2d 631 (La.1989), the jury found that the plaintiff was injured and had incurred or would incur $5,200 in medical expenses but refused to award general damages; this court found such an award inconsistent. In Marcel, as in the case at bar, the defendant was the plaintiff's underinsured motorist's carrier, the plaintiff had already received a tender from the carrier as well as medical payment benefits and monies from the tortfeasor, and the plaintiff was seeking penalties and attorney's fees from its underinsured motorist insurer, so presumably the jury was aware of any previous compensation paid to the plaintiff.
[5] We note that Hogan v. State Farm Automobile Insurance Company, 607 So.2d 747 (La.App. 1st Cir.1992), wherein this court on a motion for summary judgment required a UM carrier to plead as affirmative defenses claims for credit based on the reduction clauses in its policy, and found that the UM carrier had the burden of proving its entitlement to these credits, is not controlling here. The Hogan case involved a UM insurer that was seeking credits for payment to the insured by another UM insurer and the insured's worker's compensation insurer rather than credits based on the policy of the tortfeasor's liability insurer, as is the case here.