738 So.2d 75 (1999)
Sheila Dufrene, wife of/and Patrick J. DUFRENE
v.
Edward L. GADDIS, Sr., National Automotive Insurance Company and Farm Bureau Insurance Company.
No. 98-CA-1294.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
Writ Denied October 8, 1999.
*76 Frank H. Walk, Jr., New Orleans, Louisiana, for Defendants-Appellants.
James S. Thompson, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, *77 New Orleans, Louisiana, for Plaintiff-Appellee.
Court composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr., and SOL GOTHARD.
GRISBAUM, Judge.
This appeal arises out of an automobile accident on November 6, 1994. The trial court's May 24, 1998 judgment awarded judgment in favor of the plaintiff-appellant, Sheila Dufrene, in the sum of $9,000 for general damages, $2,502.98 for medical expenses, and $2,215.50 for loss of income. However, the trial court amended the judgment on July 29, 1998, stating that it found errors of calculation. Finding that defendant-appellee, Louisiana Farm Bureau Mutual Insurance Company (hereinafter "Farm Bureau"), had already paid the sum of $10,000 as a tender of uninsured motorist coverage and $5,000 in medical pay coverage to the plaintiff-appellant, and, thus, is entitled to a credit for all sums previously paid, the trial court dismissed the plaintiff-appellant's cause of action. Sheila Dufrene appeals both judgments. We affirm.

ISSUES
The following issues are presented for our review:
(1) Whether the trial court erred in finding plaintiff-appellant's injuries from the November 6, 1994 accident were resolved by July 1995 when she sustained an unrelated accident in an elevator;
(2) Whether the trial court erred in failing to give greater weight to the diagnoses and opinions of five treating doctors than to defendant-appellee's expert witness;
(3) Whether the payment of medical expenses by defendant-appellee for treatment after July 1995 was a tacit admission by defendant-appellee that the injury occurred beyond July 1995;
(4) Whether the trial court failed to admit into evidence Dr. John Logan's July 15, 1997 deposition;
(5) Whether the trial court failed to rule on plaintiff-appellant's remaining uninsured/underinsured motorist (hereinafter "UM") coverage;
(6) Whether the trial court erred in its award of damages;
(7) Whether the trial court erred in not awarding penalties and attorney's fees in accordance with La. R.S. 22:658;
(8) Whether the trial court erred in amending the May 24, 1998 judgment; and
(9) Whether the trial court erred in dividing the expert witness fees equally between parties.

FACTS AND PROCEDURAL HISTORY
On November 6, 1994, the plaintiff, Sheila Dufrene, was driving her 1994 Mitsubishi Galant on U.S. Highway 90, the Westbank Expressway portion, when she was hit on the driver's side by the defendant, Edward Gaddis, driving a 1986 Toyota truck. On October 17, 1995, plaintiff and her husband, Patrick Dufrene, filed suit for her injuries and against Edward Gaddis; his insurer, National Automotive Insurance Company (hereinafter "National Automotive"); and plaintiff-appellant's own UM carrier, Farm Bureau.
On October 26, 1995, Mr. and Mrs. Dufrene settled their claims against Edward Gaddis and National Automotive for the full policy limit of $10,000. On March 1, 1996, Farm Bureau paid $10,000 of its $50,000 UM coverage and paid its entire $5,000 medical payments coverage limits to Mr. and Mrs. Dufrene.
On February 6, 1998, the trial court granted plaintiffs' partial motion for summary judgment, finding that Edward Gaddis' failure to yield the right of way was the sole proximate cause of the accident. The trial court also held that the only liability insurance of the underinsured motorist was National Automotive, who paid its $10,000 limit to Mr. and Mrs. Dufrene, and that Farm Bureau has paid its entire $5,000 medical payment limits. The trial court also determined that plaintiffs' *78 claims for penalties and attorney's fees, combined with defendant's remaining UM coverage, does not exceed $50,000. Therefore, Farm Bureau is not entitled to a jury trial. The trial court took under advisement whether Farm Bureau has $40,000 remaining of UM motorist insurance limits available.
Therefore, only two issues were left for resolution at trial. The first issue was whether Mrs. Dufrene had been adequately compensated for her injuries received in the accident. The second issue was whether defendants were subject to penalties and attorney's fees for acting in some way arbitrarily and capriciously.
The trial court found in favor of Sheila Dufrene and awarded her the sum of $9,000 for general damages, $2,502.98 for medical expenses, and $2,215.50 for loss of income. The trial court found that Patrick Dufrene was not entitled to recover for any loss of consortium.
On June 17, 1998, Farm Bureau filed a motion to amend judgment. The amended judgment stated that "the [j]udgment signed on May 24, 1998 had errors of calculation[.]" The trial court amended the judgment by dismissing Mrs. Dufrene's cause of action. Specifically, the trial court, in finding that the defendant, Farm Bureau, had already paid the sum of $10,000 as a tender of UM coverage and $5,000 in medical pay coverage to plaintiff, ordered that defendant is entitled to a credit for all sums previously paid. The trial court also ordered that both parties are to split equally the expert witness fees, which totaled $4,365.20. The plaintiff, Sheila Dufrene, appeals both judgments.

LAW AND ANALYSISISSUE ONE
Mrs. Dufrene, the plaintiff-appellant (hereinafter "appellant"), argues that the trial court erred in finding that her injuries from the November 6, 1994 accident were resolved by July 1995. In a personal injury suit the test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. Streeter v. Sears, Roebuck and Co., Inc., 533 So.2d 54 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1255 (La.1989) (citations omitted). Plaintiffs are aided in proving the causal relationship between the accident and injuries by the legal presumption that a medical condition producing disability is presumed to have resulted from an accident, if the injured person was in good health prior to the accident, but shortly after the accident, the disabling condition manifested itself. Breaux v. Maturin, 619 So.2d 174 (La.App. 3d Cir.1993) (citing Streeter, supra). If such a showing is made, the burden of proof shifts to the defendants to show that some other particular incident could have caused the injury. Id.
Appellant sustained injuries to her back. We note at the outset that, during the period from the November 6, 1994 accident until May 5, 1997, appellant has been treated for her back injuries by seven different doctors in addition to a chiropractor. Here, the dispute is not whether appellant's injuries were caused by the November 6, 1994 accident but, rather, is whether the injuries were resolved by July 1995.
In his Reasons for Judgment, the trial judge noted that the injury sustained from the November 6, 1994 incident is not appellant's first back injury. Dr. Susan Vogel, one of appellant's treating physicians, testified that she first treated appellant in September of 1989 when appellant strained her back when lifting a 300-pound patient. Three days after the car accident, appellant was examined by Dr. Alan Hild, because Dr. Vogel was unavailable. According to Dr. Vogel's review of Dr. Hild's notes, Dr. Hild refers to appellant's back pain problem associated with her pregnancy in 1991-1992. Appellant also stated that she had sciatica in 1988 during her first pregnancy and had lower back muscle *79 spasms and low back strains during her second pregnancy in 1992.
Dr. Vogel herself examined appellant 12 days following the accident and found appellant to have back strain. Because appellant continued to complain of back pain, Dr. Vogel referred her to Dr. Jack Waxman, a rheumatologist, on December 1, 1994, less than a month after the accident. Dr. Waxman found that she had a "lumbar disc syndrome." Dr. Waxman saw her again on April 18, 1995 and ordered an MRI, which showed a degenerated L5-SI disc. However, in Dr. Waxman's deposition testimony taken on February 20, 1998, he noted that appellant's nerve root irritation problems had improved between his two visits and that, after reviewing appellant's medical records of visits from other doctors, Dr. Waxman's impression was "that things were going relatively well."
Appellant also began treatment with Dr. Gerry Provance, a chiropractor, on May 12, 1995. She visited Dr. Provance nine times. Appellant did not return after the last visit on July 17, 1995 because her "back was under pretty good control."
On July 25, 1995, appellant was walking out of an elevator while at work when she tripped over the threshold and hit her knee, arm, leg and hip. She noted that "there was some low back pain, but it was from what I normally had." On a follow-up visit to Dr. Vogel on July 28, 1995, Dr. Vogel concluded that appellant had her pain under control and noted that appellant had been able to resume her normal activities, including yard work.
During September 1995, appellant was certified in scuba diving. Appellant testified that her back problems did not interfere in her actual scuba diving, and she has been on five diving trips, including a diving trip to Australia, since the accident.
On October 12, 1995, complaining of recurring back pain, appellant returned to see Dr. Vogel. Appellant also sought treatment from Dr. Joshua Kaufman on November 7, 1995. Dr. Kaufman testified that he found subjective complaints in the low back with nothing grossly objectively wrong. Appellant was referred to an exercise physiologist. By December 18, 1995, on her second visit, appellant told Dr. Kaufman that overall she was improved.
Appellant also visited Dr. Liza Maniquis-Smigel on July 24, 1996 and followed up this visit on August 23, 1996 with Dr. William Knight. Dr. Knight noted that appellant had "chronic lumobsacral symptoms, including sciatic radiation to the left extremity." However, appellant never mentioned to either Dr. Maniquis-Smigel or Dr. Knight of the elevator accident, only the previous back injuries, and the 1994 automobile accident.
Appellant saw Dr. John Logan, her last treating physician, from December 12, 1996 through January 20, 1998. Dr. Logan diagnosed her as having a degenerative back condition and related all of her back pain to the November 1994 accident. However, Dr. Logan was not informed of the elevator accident and he stated, "I have a very difficult time with causation as y'all know."
Finally, Dr. Mark Juneau, who examined appellant at the request of defendantappellee, stated that he found nothing objective as to her back and no explanation as to why she continued to complain of pain over two and one-half years following the automobile accident. Dr. Juneau stated that "[t]here's no way for me to know which one caused which. 1989, 1992, 1994, elevator fall, I think it all relates back to the clonicity [sic] of this pain, 1989. She hurt her back when she lifted her patient."
Considering the foregoing evidence, we find that the trial court did not err in concluding that appellant's injuries caused by the November 1994 accident were resolved by July 1995. Appellant had recurring back problems before the 1994 accident. Appellant was properly and continuously treated for her injuries and, by July 1995, she was able to resume her activities. Appellee also established that *80 appellant sustained a subsequent injury in July 1995, which could have exacerbated her condition. Although appellant continued to complain of recurrent pain, she was able to resume working eight, 12 or 16-hour shifts. Appellant also complained about her lifestyle restrictions; however, she admitted having successful scuba-diving trips. Ergo, we find no error.

LAW AND ANALYSISISSUE TWO
Appellant next argues that the trial court erred in failing to give greater weight to the diagnoses and opinions of her treating physicians. Appellant also contends that, because the trial court did not rule on appellee's deposition objections as being based on reviews of the records of other doctors, the trial court failed to admit into evidence these opinions. We disagree. In its well-reasoned judgment, the trial court specifically considered and noted the testimonies of all of appellant's treating physicians. We note that:
"The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong but whether the factfinder's conclusion was a reasonable one. Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. The reviewing court must always keep in mind that if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently."
Boudoin v. Crawford and Marshall, Ltd., 97-224 (La.App. 5th Cir. 1/14/98), 709 So.2d 798, 802 (quoting Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173). Finding the trial court's findings to be reasonable, we conclude there to be no error.

LAW AND ANALYSISISSUE THREE
Appellant claims that, by paying her medical treatments after July 1995, this was a tacit admission by appellee that this treatment was for injuries caused by the car accident, specifically because the policy requires that such payments be made only for "bodily injury, caused by accident." We agree appellee was required to pay the medical expenses; however, we disagree appellee admits liability by paying. Our Insurance Code requires that "All insurers issuing any type of contract... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." La. R.S. 22:658(A)(1). Appellant's coverage under Part II, Medical PaymentsCoverage C requires the insurer to "pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services...." However, we note this section of medical payments provision is a separate provision from liability.
Our jurisprudence has acknowledged that the medical payments provision is a separate provision from liability provisions. "The medical payments provisions of the insurance contract is a separate and distinct contractual arrangement between the parties which serves the purpose of providing additional protection to the insured without the issue of fault becoming involved." Hampton v. Thomas, 433 So.2d 884, 886 (La.App. 5th Cir.1983) (quoting Odom v. Am. Ins. Co., 213 So.2d 359 (La. App. 3d Cir.1968) (J. Tate concurring)). Furthermore, "`[s]uch (medical coverage) provision is a separate obligation of the insurer, independent of its obligation to pay sums of money as damages under the liability features of the contract.'" Odom, supra, at 362 (quoting 8 Appleman, Insurance Law and Practice, § 4896, p. 350 (1962)).
Under its contractual agreement, appellee was required to pay the medical expenses up to $5,000. Appellee has paid a total of $5,430.27, including treatments beyond July 1995. However, we distinguish this payment from being a tacit admission of medical causation or ultimate liability.

*81 LAW AND ANALYSISISSUE FOUR

Appellant next complains that the trial court failed to admit into evidence the July 15, 1997 deposition of Dr. Logan in accordance with an agreement between trial counsel. Although both of Dr. Logan's July 15, 1997 and March 12, 1998 depositions are listed in Plaintiffs Pre-Trial Conference Matters and confirmed by letter from appellant's counsel, there is no evidence of a formal stipulation agreeing to the admissibility by both parties. However, appellant has failed to demonstrate how the trial court's alleged failure to consider the July 15, 1997 deposition would cause harm to her case. Furthermore, this testimony was proffered into evidence and, upon review, we find that Dr. Logan's conclusions do not differ from Dr. Logan's March 12, 1998 testimony. Ergo, we see no error.

LAW AND ANALYSISISSUE FIVE
Appellant next argues that the trial court did not rule on her remaining UM coverage. The February 6, 1998 judgment stated that the trial court took under advisement whether appellee has $40,000 remaining of UM insurance limits available and reserved the issue for trial. Finding that appellant was entitled to judgment of $9,000 in general damages, the trial court rendered this issue moot. We agree. UM coverage is "excess" coverage, and a plaintiff has a right to receive from a UM insurer only that portion of his damages which exceeds the limits of the tortfeasor's liability insurance. Boudreaux v. Colonial Lloyd's Ins. Co., 633 So.2d 682 (La.App. 1st Cir.1993). Even though the trial court might use the word "credit," its judgment does nothing more than determine the amount by which a plaintiffs total damages exceed the tortfeasor's liability insurance limits. Id. Furthermore, appellee has already tendered the amount of $10,000 as a payment for payment under the uninsured motorist coverage of appellant's policy. Therefore, we see no error.

LAW AND ANALYSISISSUE SIX
Next, appellant claims that the trial court erred in failing to award her damages for her full past and future lost wages, medical expenses, and general damages. The standard of review for damage awards requires a showing that the trier of fact abused its great discretion accorded in awarding damages. Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991). In effect, the award must be so high or low in proportion to the injury that it "shocks the conscience." Id. The discretion vested in the trier of fact is great, "even vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The trial court awarded $23.48 for medication, $1,815.50 for treatment at the Ochsner Clinic, and $664 for treatment by Dr. Provance, appellant's chiropractor, which totaled $2,502.98 in medical expenses. Although appellant alleges the true unreimbursed past medical expenses were $13,315.53, the court only included medical treatment from the date of the accident up until the date of the elevator accident. Appellant was also awarded $2,502.98 for lost wages from the time she sustained her accident up until the date of the elevator accident. Appellant was also awarded $9,000 in general damages.
As discussed above, we find that the evidence supports that, by July 1995, the injuries suffered by appellant stemming from the automobile accident had subsided. Therefore, the trial court's award of $9,000 for an eight-month soft tissue injury is not so high or low in proportion to the injury that it shocks the conscience. Furthermore, the trial court correctly awarded all of the medical bills and lost wages incurred during that eight-month period. Because there are no future wages or future medical expenses to *82 be incurred, the trial court did not err in failing to award these damages.

LAW AND ANALYSISISSUE SEVEN
Appellant further claims that she is entitled to penalties and attorney's fees under La. R.S. 22:658. Normally, a trial court's conclusion as to assessment of penalties and attorney's fees under this article is in part a determination of fact and may not be disturbed in the absence of manifest error. B. Bennet Mfg. Co., Inc. v. S. Carolina Ins. Co., 96-731 (La.App. 5th Cir. 3/25/97), 692 So.2d 1258. An insurer's refusal to pay is not arbitrary, capricious, or without probable cause where serious issues regarding the appellant's right to recovery are raised. Id. Here, the trial court determined that appellee tendered a fair and reasonable settlement offer so as not to be liable for penalties and attorney's fees. It is not disputed that appellee has already paid appellant $10,000. We conclude that appellee was justified in withholding additional payments for any and all claims after the July 1995 elevator incident because issue regarding appellant's right to recovery after this incident was raised. Accordingly, appellant has not shown that appellee was arbitrary or capricious and, thus, entitled to penalties and attorney's fees.

LAW AND ANALYSISISSUE EIGHT
Finally, appellant asserts that the trial court incorrectly amended the May 24, 1998 judgment by dismissing appellant's cause of action with no monetary award.
According to the record, the judgment was granted on May 24, 1998. On June 4, 1998, appellee filed a motion to tax as court costs the costs of depositions filed into the record and, on June 17, 1998, filed a motion to amend the judgment.
On July 15, 1998, before the motion to amend the judgment was heard, the trial court granted appellant an order of appeal. Appellant then filed an opposition to appellee's motion to amend the judgment on July 20, 1998. The trial court granted appellee an order for appeal on July 21, 1998. The amended judgment was not signed until July 29, 1998. Appellant was granted a second appeal from the amended judgment.
A problem arises because the trial court granted the order of appeal before it amended the judgment. Ordinarily, the trial court is divested of jurisdiction when it renders an order granting an appeal. La.Code Civ. P. art.2088. However, the court, in Mariner's Village Master Ass'n, Inc. v. Continental Properties, 93-1530 (La.App. 1st Cir. 5/20/94), 639 So.2d 1188, found that the trial court was not divested of its jurisdiction when it signed the initial order granting appellant an appeal because the trial court had not yet acted on appellee's motion for new trial. Thus, the trial court retained jurisdiction over the matter when it rendered the subsequent judgments and orders.
Furthermore, the general rule is a final judgment is not subject to a substantive amendment by the trial judge on his own motion or motion of any party. In such an event, the proper recourse is a timely application for new trial or an appeal. Alliance for Good Gov't, Inc. v. Jefferson Alliance for Good Gov't, Inc., 96-309 (La.App. 5th Cir. 10/16/96), 683 So.2d 836, 838 (citations omitted).
Here, the trial court had not yet acted on appellee's motion to amend the judgment when it granted appellant an order for appeal. Following the rationale in Mariner's Village, supra, we conclude that the trial court retained jurisdiction over the matter when it rendered the subsequent judgment. However, the inquiry does not end with the resolution of this issue alone.
La.Code Civ. P. art.1951 provides that "A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party: (1) To alter the phraseology of the judgment, but not the *83 substance; or (2) To correct errors of calculation." Thus, a judgment may be amended by a trial court where the judgment takes nothing away from or adds nothing to the original judgment. Alliance for Good Gov't, Inc., supra. As a general rule, a final judgment is not subject to substantive amendment by the trial judge on his own motion or motion of any party. Id. In such an event, the proper recourse is a timely application for new trial or an appeal. Id.
Here, the first judgment rendered judgment in favor of appellant and against appellee. In the amended judgment, although the damage award to appellant was the same, the trial court concluded that, because appellant had already been paid, the amount of the damage award as awarded in the first judgment, the amended judgment, dismissed appellant's cause of action. Although the trial court indicated that the first judgment had errors of calculation, the amended judgment, in dismissing appellant's cause of action, would appeal to take away from the original judgment because it dismisses appellant's cause of action.
However, in Johnson v. Phillips, 544 So.2d 600 (La.App. 1st Cir.1989), the court recognized that an amended judgment that took away from the plaintiff an award the plaintiff had been granted in the original judgment was proper. Similar to this case, the court in Johnson held the amended judgment properly gave defendant credit for the amount it had originally granted to plaintiff. Thus, the amended judgment eliminated any liability for defendant.
Accordingly, we find that the trial court was within its scope of authority granted by La.Code Civ. P. art.1951 in amending the judgment to correct an error of calculation and properly giving appellee credit for the amount it had originally granted to appellant.

LAW AND ANALYSISISSUE NINE
Finally, both parties allege as error the trial court splitting equally the expert witness fees, which total $4,365.20, in the amended judgment.
The trial court retained its limited jurisdiction in setting and taxing costs and experts witness fees. La.Code Civ. P. art. 2088(10). Appellee argues that, according to La. R.S. 13:3666(B), "The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment...." Since they were no longer cast in judgment, the assessment of such costs was in error. We also note La.Code Civ. P. art.1920, which provides that "Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
However, following our jurisprudence, while it is the general rule to tax the party cast in judgment, we find the trial court may assess the costs of a suit in any equitable manner. Bordelon v. Comeaux Furniture and Appliance, Inc., 97-405 (La.App. 5th Cir. 10/15/97), 701 So.2d 1032 (citing Courtney v. Winn-Dixie La., Inc., 447 So.2d 504 (La.App. 5th Cir.1984) and Ashley Enterprises, Inc. v. Esplanade Plaza Co., 425 So.2d 1010 (La.App. 5th Cir.1983)).
Our review of this case discloses no abuse of discretion in the determination by the trial court that each party bears an equal portion of the expert witness costs.
For the foregoing reasons, the trial court's judgments are affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.